**Bennie GREEN, Appellant,**

v.

**UNAUTHORIZED PRACTICE OF LAW COMMITTEE, Appellee.**

No. 05–93–00996–CV.

Court of Appeals of Texas, Dallas.

July 21, 1994.

James R. Hilliard, Dallas, for appellant.

Mark A. Ticer, Dallas, for appellee.

Before KINKEADE, ROSENBERG and MORRIS, JJ.

## OPINION

ROSENBERG, Justice.

Bennie Green appeals a summary judgment rendered in favor of the Unauthorized Practice of Law Committee for the State Bar of Texas (Committee) in this suit brought by the Committee under section 81.101 of the Texas Government Code[1] to permanently enjoin Green from engaging in the unauthorized practice of law. In two points of error, Green contends that the trial court erred in granting the Committee's motion for summary judgment and that section 81.101 of the government code is unconstitutional. We reverse and remand in part and affirm in part the trial court's judgment.

## BACKGROUND

Green owns and operates Eagle Consulting Firm, which assists individuals in settling their personal injury and property damage claims with insurance carriers. The Committee filed suit against Green seeking injunctive relief and an accounting of, and judgment for, sums resulting from Green's activities which the Committee alleged constituted the unauthorized practice of law.

After the trial court issued a temporary injunction, the Committee filed a motion for summary judgment seeking to permanently enjoin Green from engaging in certain acts which the Committee alleged constituted the unauthorized practice of law. Attached to the Committee's motion for summary judgment were excerpts from the temporary injunction hearing and excerpts from Green's deposition. The Committee alleged that Green engaged in the business of settling personal injury claims for a fee in which he handled disputed damage claims, negotiated damage settlements for his clients, implicitly approved of clients' settlements, and implicitly advised clients to accept settlements. It contended that, as a matter of law, these acts constituted the unauthorized practice of law

and that Green should be permanently enjoined from such activities.

The Committee's summary judgment evidence showed: Green handled the four claims of Latrice Moore, Shirley McCullogh, Mary Moore, and Patricia Ann Moore. All claims arose from a motor vehicle accident and involved personal injury claims. Green made offers of settlement to the insurance company on behalf of these individuals regarding their injury claims, sent demand letters regarding these claims, negotiated on behalf of the clients, and settled the claims with the insurance company. None of the four individuals negotiated on their own behalf regarding their respective claims.

Green also handled a claim for Glenda O'Neal. Green furnished a power of attorney to the insurance company that indicated he was not an attorney. He initially attempted to negotiate a settlement without O'Neal present and was informed that O'Neal would have to be consulted. Green furnished a letter to the insurance company stating that he did have, "by rights of his attorney privileges," the right of discussing O'Neal's claim without her. However, all negotiations and settlement regarding O'Neal's claim occurred in her presence. During negotiations, Green discussed his evaluation of O'Neal's claim and the amount of damages he felt O'Neal was entitled for her claim. Green also advised O'Neal on whether to accept the settlement offer made to her. The insurance company settled with O'Neal on her claim.

Green testified at the temporary injunction hearing that (1) he assists people with their personal injury and property damage claims pursuant to a written contract or power of attorney on a contingency fee basis; (2) the power of attorney gives him the power to do whatever he needs to do to assist clients with their claims; (3) when he gets claims, the personal injury damages are unresolved; (4) damages are always at issue, and he acts on behalf of his clients in negotiating damages with the insurance companies pursuant to the clients' instructions; (5) he acts as a "go-between," merely passing information about

1. Tex. Gov't Code Ann. § 81.101 (Vernon 1988).

damages from the insurance company to the client and from the client to the insurance company; (6) he has taken on some cases where liability was in dispute; (7) when he settles a claim, his name goes on the check; therefore, his signature is required on the checks in order for the clients to get their money; (8) he implicitly approves of the settlement by signing off on the check; and (9) when he gets a release from the insurance company, he reviews the release to make sure that the proper parties are being released. In describing the nature of his business, Green admitted that a client comes to him, he "sign[s] them up," looks at the police report if there is one, talks to the client, and comes to an agreement on what they ought to ask the insurance company for. He then sends that information to the insurance company. He talks to the insurance company, going back and forth between the insurance company and his client, and agrees on a figure with the consent of his client.

Green testified in his deposition that he sends demand letters to the insurance companies on behalf of his clients in settlement of their claims. Green sent a demand letter to Travelers Insurance Company regarding a claim for Mary Moore. The demand letter set forth the facts of the accident, contained a liability section claiming four specific instances of negligence, and contained a section concerning damages for pain and suffering, mental anguish, disability and restrictions, medical expenses, and a summary of damages. Green put in the damage figures at Moore's instruction. Green composed his clients' demand letters, which contained the same type of information as Moore's letter, and either he or the clients "plugged in" the damage figures. Green also settled Angela McDonald's claim in which the insurance company contested liability or at least raised the issue of liability.

Green filed a response to the Committee's motion for summary judgment and attached his personal affidavit. Green contended that the Committee's summary judgment proof was insufficient to establish that his conduct constituted the unauthorized practice of law. Green asserted that genuine issues of material fact existed regarding his "representation"

of individuals and whether such conduct constituted the unauthorized practice of law.

The trial court granted summary judgment in favor of the Committee, concluding that Green had engaged in the following conduct: (1) contracting with persons to represent them with regard to their personal causes of action for property damage and/or personal injury, (2) advising persons about their rights and the advisability of making claims for personal injuries and/or property damages, (3) advising persons whether to accept an offered sum of money in settlement of claims for personal injuries and/or property damage, (4) entering into contracts with persons to represent them in their personal injury and/or property damage matters on a contingent fee basis, together with an attempted assignment of a portion of the person's cause of action, and (5) advising clients of their rights, duties, and privileges under the law. The trial court found that these activities constituted the practice of law. The trial court's judgment permanently enjoined Green from engaging in these activities. It denied all other relief not specifically granted.

## STANDARDS OF REVIEW

### A. Permanent Injunction

Injunctive relief may only be granted upon a showing of (1) the existence of a wrongful act; (2) the existence of imminent harm; (3) the existence of irreparable injury; and (4) the absence of an adequate remedy at law. *Priest v. Texas Animal Health Comm'n*, 780 S.W.2d 874, 875 (Tex.App.— Dallas 1989, no writ). The grant or refusal of a permanent or temporary injunction is ordinarily within the trial court's sound discretion and, on appeal, review of the trial court's action is limited to the question of whether the action constituted a clear abuse of discretion. *Priest*, 780 S.W.2d at 875. Where the facts conclusively show that a party is violating the substantive law, the trial court should enjoin the violation, and in such case, there is no discretion to be exercised. *Priest*, 780 S.W.2d at 876.

## B. Summary Judgment

A trial court may render summary judgment only if the pleadings, depositions, admissions, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Tex.R.Civ.P. 166a(c); *Rodriguez v. Naylor Indus., Inc.,* 763 S.W.2d 411, 413 (Tex.1989). In a summary judgment proceeding, the plaintiff, as movant, must conclusively prove his entitlement to prevail on each element of the cause of action as a matter of law. *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972). When a plaintiff shows entitlement to summary judgment, the nonmovant defendant seeking to avoid the judgment must present to the trial court proof adequate to raise a fact issue. *Brooks v. Sherry Lane Nat'l Bank,* 788 S.W.2d 874, 876 (Tex.App.—Dallas 1990, no writ). In determining whether there is a disputed material fact issue precluding summary judgment, we review the summary judgment evidence in the light most favorable to the nonmovant and resolve any doubts in the nonmovant's favor. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

A summary judgment seeks to eliminate patently unmeritorious claims and untenable defenses, not to deny a party its right to a full hearing on the merits of any real issue of fact. *Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 931 (1952). The summary judgment rule does not provide for a trial by deposition or affidavit. The rule provides a method of summarily ending a case that involves only a question of law and no genuine fact issues. *Spencer v. City of Dallas,* 819 S.W.2d 612, 615 (Tex.App.—Dallas 1991, no writ). The trial court's duty is to determine if there are any fact issues to try, not to weigh the evidence or determine its credibility and try the case on affidavits. *Spencer,* 819 S.W.2d at 615. If conflicting inferences may be drawn from a deposition and from an affidavit filed by the same party in opposition to a motion for summary judgment, a fact issue is presented. *Randall v. Dallas Power & Light Co.,* 752 S.W.2d 4, 5 (Tex.1988). However, legal conclusions and opinions made in an affidavit are not competent summary judgment evidence and are insufficient to raise an issue of fact in response to a motion for summary judgment. *See Mercer v. Daoran Corp.,* 676 S.W.2d 580, 583 (Tex.1984).

## UNAUTHORIZED PRACTICE OF LAW

In his first point of error, Green contends that the trial court erred in granting the Committee's motion for summary judgment. Green argues that his deposition testimony and his affidavit contain conflicting statements regarding his activities which raise material fact issues precluding summary judgment.

The Committee contends that Green's affidavit is conclusory and contains no specific reference to the testimony relied upon in the Committee's summary judgment motion. The Committee argues that Green's affidavit is incompetent summary judgment proof and, therefore, creates no material fact issues.

For the Committee to be entitled to summary judgment, it must conclusively prove that Green's activities constitute the unauthorized practice of law and that no material fact issues exist concerning Green's activities.

Section 81.101 of the government code defines the practice of law as:

> [T]he preparation of a pleading or other document incident to an action or special proceeding or the management of the action or proceeding on behalf of a client before a judge in court as well as a service rendered out of court, including the giving of advice or the rendering of any service requiring the use of legal skill or knowledge, such as preparing a will, contract, or other instrument, the legal effect of which under the facts and conclusions involved must be carefully determined.

TEX. GOV'T CODE ANN. § 81.101(a) (Vernon 1988).

The statutory definition is not exclusive. TEX. GOV'T CODE ANN. § 81.101(b) (Vernon 1988). Courts inherently have the power to determine what is the practice of law on a case-by-case basis. *See* TEX. GOV'T CODE ANN. § 81.101(b) (Vernon 1988); *Unauthorized Practice Comm. v. Cortez,* 692 S.W.2d 47, 50 (Tex.), *cert. denied,* 474 U.S.

980, 106 S.Ct. 384, 88 L.Ed.2d 337 (1985); *Brown v. Unauthorized Practice of Law Comm.*, 742 S.W.2d 34, 41 (Tex.App.—Dallas 1987, writ denied). The practice of law embraces, in general, all advice to clients and all action taken for them in matters connected with the law. *Brown*, 742 S.W.2d at 41. A person may confer legal advice not only by word of mouth, but also by a course of conduct that encourages litigation and the prosecution of claims. *Brown*, 742 S.W.2d at 40.

This Court has held that the activities set forth in the trial court's judgment constitute the practice of law. *See Brown*, 742 S.W.2d at 42. The first question, therefore, is whether the Committee's summary judgment evidence establishes that Green engaged in these activities.

The Committee's summary judgment evidence shows that Green engaged in a course of conduct calculated to advise individuals of their legal rights, duties, and privileges. Green contracted with individuals under a power of attorney to assist them in settling their disputed property damage and personal injury claims for a contingency fee. The power of attorney gave Green the authority to do whatever he needed to do to settle his clients' claims. Settling disputed property damage or personal injury claims secures an individual's legal rights with respect to such claims and involves the use of legal skill and knowledge. When Green agreed to handle these claims for his clients, he impliedly advised them that they did in fact have legal rights and that they should make a claim. *See Brown*, 742 S.W.2d at 40.

Green composed and sent demand letters for settlement of his clients' claims. The demand letters contained a section on liability and a section on legally compensable damages. The preparation of these demand letters involves the use of legal skill and knowledge. In preparing these letters and assisting clients with "plugging in" the damage figures, Green impliedly advised his clients about the types and amount of damages they were entitled under the law. Additionally, in discussing O'Neal's claim with the insurance company, Green gave his evaluation of O'Neal's claim and the amount of damages he believed she was entitled for her claim. In doing this, Green impliedly advised O'Neal of the amount of damages he thought she was entitled under the law. Determining the extent of legally compensable damages, by its very nature, requires legal skill and knowledge. *Brown*, 742 S.W.2d at 40. Even if we accept Green's contention that he merely acted as a "go-between" and asked only for the damages requested by his clients, Green nevertheless impliedly advised his clients that the requested damages were the only damages to which they were entitled. *See Brown*, 742 S.W.2d at 41.

■ Further, Green's course of conduct showed that he negotiated his client's claims with the insurance companies. Again, even if Green acted only as a "go-between," merely passing information about damages between the insurance company and his client, Green's conduct still constitutes negotiation. A party negotiates if that party conducts communications or conferences with a view toward reaching a settlement or agreement. BLACK'S LAW DICTIONARY 1036 (6th ed.1990). Green testified that he met with his clients and came to an agreement on what damages they would seek from the insurance company. He admits that he then transferred the various offers and counteroffers between his clients and the insurance companies with the intent of reaching a settlement of his clients' claims. In negotiating his clients' claims, Green impliedly advised his clients of the propriety of the settlement offers made by the insurance companies.

Once a client's claim was settled, the insurance company would place Green's name on the settlement check. When Green signed the check, he impliedly approved of the settlement amount and impliedly advised his client to accept the settlement. Even if Green accepted settlements only with the consent of his clients or only at his clients' directives, Green nevertheless impliedly approved of the settlement amounts and impliedly advised his clients to accept the sum of money offered in settlement. *Cf. Brown*, 742 S.W.2d at 41. Further, the summary judgment evidence shows that he advised O'Neal on whether to accept the settlement offer made to her.

■ We conclude that the Committee's summary judgment evidence conclusively establishes that Green (1) contracted with persons to represent them with regard to their personal causes of action for property damage or personal injury, (2) advised persons about their rights and the advisability of making claims for personal injuries or property damages, (3) advised persons whether to accept an offered sum of money in settlement of claims for personal injuries or property damages, (4) entered into contracts with persons to represent them in their personal injury or property damage matters on a contingent fee basis, and (5) advised clients of their rights, duties, and privileges under the law.

■ However, the Committee's summary judgment evidence does not establish, as a matter of law, that Green attempted to assign himself a portion of any client's cause of action. Without proof of unlawful conduct or proof of intent to commit such conduct, injunctive relief is improper. *Priest,* 780 S.W.2d at 878. Therefore, the Committee failed to establish its right to judgment on this ground. We sustain Green's first point of error with respect to this portion of the summary judgment.

■ We next determine whether Green's controverting affidavit raises a material fact issue precluding summary judgment on the other grounds. Green's affidavit states that "[a]t all times while doing business as a public adjuster [he] only assisted the person in performing those ministerial acts required to present a claim for personal injuries and/or property damage to the insurance carrier and conveyed to the carrier the directives and information instructed by the claimant." The affidavit further states that he did not (1) "enter into contracts to represent persons with regard to their claims for personal injury and/or property damages; but rather [he] acted in the capacity of an attorney-in-fact under a power of attorney and grant of authority from the individual to assist them in presenting their claim to the insurance carrier for consideration," (2) "directly or indirectly advise persons of their legal rights, duties or privileges," (3) "advise persons of the advisability of making a claim

for personal injuries and/or property damages," (4) "negotiate or settle client's personal injury claims with insurance companies; but rather [he] at all times acted as an intermediary to transfer directives and information from the person to the insurance company," (5) "give approval of client settlements on their claims," (6) "advise persons as to whether to accept an offered sum in settlement of a claim for personal injuries and/or property damage," (7) "advise persons of the prospects of settling personal injury accidents or other legal claims," (8) "determine legal liability or the extent of legally compensable damages," or (9) "render any service requiring the use of legal skill or knowledge, such as preparing as [sic] will, contract, or other instrument."

Viewed most favorably to Green and resolving all doubts in his favor, we conclude that Green's affidavit states legal conclusions and fails to present enough facts to allow a court to consider Green's activities as anything other than the unauthorized practice of law. The affidavit repeats many of the trial court's conclusions of law contained in its judgment and does not allege any specific facts to rebut the testimony relied upon by the Committee. Green fails to raise any material issue of fact to preclude summary judgment. *See Mercer,* 676 S.W.2d at 583.

We conclude that the trial court properly granted summary judgment permanently enjoining Green from (1) contracting with persons to represent them with regard to their personal causes of action for property damage or personal injury, (2) advising persons about their rights and the advisability of making claims for personal injuries or property damages, (3) advising persons whether to accept an offered sum of money in settlement of claims for personal injuries or property damages, (4) entering into contracts with persons to represent them in their personal injury or property damage matters on a contingent fee basis, and (5) advising clients of their rights, duties, and privileges under the law. We overrule Green's first point of error with respect to these portions of the summary judgment.

## CONSTITUTIONAL CLAIMS

In Green's second point of error, he contends that section 81.101 of the Texas Government Code is vague, indefinite, and overly broad and, therefore, violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution and article I, sections 10 and 19 of the Texas Constitution.

Except to attack the legal sufficiency of the movant's grounds for summary judgment, the nonmovant must expressly present to the trial court in a written answer or response to the motion any reason for avoiding the movant's entitlement to summary judgment. *Spencer*, 819 S.W.2d at 615. Any issue not expressly presented to the trial court in a written motion or response may not be raised as grounds for reversal on appeal. TEX.R.CIV.P. 166a(c). Constitutional arguments may be waived if not properly presented to the trial court for disposition at the summary judgment hearing. *Fadia v. Unauthorized Practice of Law Comm.*, 830 S.W.2d 162, 165 (Tex.App.—Dallas 1992, writ denied).

Green failed to present the constitutional issue to the trial court in the summary judgment proceedings. He did not raise the argument in his response to the Committee's motion for summary judgment. Therefore, Green waived his right to complain of this issue on appeal. We overrule Green's second point of error.

## CONCLUSION

We reverse the trial court's summary judgment to the extent that it concludes that Green contracted with persons for an attempted assignment of the person's cause of action and to the extent that it grants permanent injunctive relief on this ground. We dissolve the permanent injunction enjoining Green from such activity. We remand that issue to the trial court for further proceedings. We affirm the trial court's judgment in all other respects.