Ray CRAIN and Credit Management Consulting Company, Appellants,

v.

THE UNAUTHORIZED PRACTICE OF LAW COMMITTEE OF THE SUPREME COURT OF TEXAS and Jeff Lehmann, Appellees.

No. 01–98–01010–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 23, 1999.

Rehearing Overruled March 6, 2000.

Chuck Portz, Portz & Portz, Houston, for Appellants.

Robert Higgason, Law Office of Robert W. Higgason, Houston, for Appellees.

Panel consists of Chief Justice SCHNEIDER and Justices ANDELL and DUGGAN.*

* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

## OPINION

**MICHAEL H. SCHNEIDER, Chief Justice.**

Appellants, Ray Crain and Credit Management Consulting Company (CMCC), appeal summary judgments rendered in favor of appellees, the Unauthorized Practice of Law Committee of the Supreme Court of Texas (UPLC) and Jeff Lehmann. The summary judgment rendered in favor of UPLC enjoins Crain and CMCC from engaging in the unauthorized practice of law. By eight points of error, Crain and CMCC challenge: (1) whether the determination that an activity constitutes the unauthorized practice of law is a question of law; (2), (3), (4) whether the preparation and filing of lien affidavits and mechanic's liens constitutes the unauthorized practice of law; (5) whether laches bars the suit brought by the UPLC; (6) whether the summary judgment based on immunity granted in favor of Lehman was proper; and (7) whether the trial court's order exceeded the motions. We affirm.

### Facts and Procedural History

This case revolves around the debt collection practices of Crain (who is not an attorney) and his business, CMCC. CMCC's business practices are undisputed. CMCC collects debts related to the construction industry, as well as medical and business debts. A substantial part of CMCC's business involves the preparation, signing and filing of lien affidavits on behalf of laborers, so that mechanic's and materialmen's liens against real property can be perfected and fixed. Crain also prepares and personally signs notice letters on behalf of, and as an agent of, CMCC's clients. Crain then transmits the notices and affidavits to the parties and files or causes to be filed the affidavits in the real property records in the appropriate county. Prior to the temporary injunction entered in this case, Crain also prepared and filed releases of liens in the real property records.

As protection for the public, the Supreme Court of Texas appoints the nine members of the UPLC to investigate and prosecute persons who practice law without authorization. *Drew v. Unauthorized Practice of Law Comm.*, 970 S.W.2d 152, 153 (Tex.App.—Austin 1998, pet. denied). In 1983, the UPLC conducted an investigation of Crain's and CMCC's business practices. No action was taken against Crain or CMCC as a result of this investigation.

However, in 1995, the UPLC investigated Crain and CMCC, determined they were engaged in the unauthorized practice of law, and filed suit to enjoin Crain and CMCC from continuing such practices. The district court granted summary judgment in favor of the UPLC permanently enjoining Crain and CMCC from: (1) engaging in any practice constituting the practice of law; (2) preparing, charging, or receiving any compensation for the preparation of legal instruments affecting real property, including a mechanic's lien, materialman's lien, release of lien, or lien affidavit and claim; (3) the continuation of any ongoing or new lien notices, release of lien preparation, lien affidavit and claim preparation or filing, and negotiations with home owners, lienees, potential lienees, and insurance companies; (4) advertising they possess the ability to collect money for claimants by the use of notices of intention to file liens or lien affidavits, or to charge or receive compensation for the preparation of any legal instrument affecting title to real property; (5) filing or preparing any instrument which affects title to real property for any person other than themselves; (6) supplying legal forms to third parties, including forms for the preparation of a mechanic's lien, materialman's lien, release of lien, or lien affidavits, and/or providing advice to third parties regarding completion or filing of such forms or documents; and (7) accepting money or consideration for performing any of the services or acts that Crain or CMCC was enjoined from doing.

CMCC brought suit against Jeffrey Lehmann, the chairman of the Houston subcommittee of the UPLC, asserting he

tortiously interfered with CMCC's business in the course of the UPLC investigation. The court also granted a summary judgment for Lehmann based on immunity. CMCC appeals both summary judgments. The trial court stayed a portion of the injunction pending this Court's review.

### Is the Determination of Whether CMCC's Acts Constitute the Unauthorized Practice of Law a Question of Law?

■ In its first point of error, CMCC contends the trial court erred in granting summary judgment in favor of the UPLC because it is a question of fact whether the preparation and filing of a mechanic's lien constitutes the unauthorized practice of law. We disagree.

■ The unauthorized practice of law is a proper subject for summary judgment. *Unauthorized Practice of Law Comm. v. Cortez*, 692 S.W.2d 47, 51 (Tex.1985) (holding it was for court to decide whether activities of private immigration service agency amounted to practicing law); *Fadia v. Unauthorized Practice of Law Comm.*, 830 S.W.2d 162, 164 (Tex.App.—Dallas 1992, writ denied) (holding trial court had authority to decide as matter of law whether Fadia's distribution of will manuals constituted unauthorized practice of law). When the activities alleged to be the practice of law are undisputed, courts have the inherent power to determine on a case-by-case basis whether those activities constitute the unauthorized practice of law. *Cortez*, 692 S.W.2d at 50–51; *Fadia*, 830 S.W.2d at 164. The trial court, therefore, had the authority to decide as a matter of law whether CMCC's practices constitute the unauthorized practice of law.

### Whether the Preparation and Filing of Lien Affidavits and Mechanic's Liens Constitutes the Unauthorized Practice of Law?

#### Standards of Review

#### Summary Judgment

■ The summary judgment rule provides a method of summarily ending a case that involves only a question of law and no fact issues. Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985); *Cigna Ins. Co. v. Rubalcada*, 960 S.W.2d 408, 411 (Tex. App.—Houston [1st Dist.] 1998, no pet.). When, as here, both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides and determine all questions presented. *Commissioners Ct. of Titus Cty. v. Agan*, 940 S.W.2d 77, 81 (Tex.1997); *Rubalcada*, 960 S.W.2d at 411– 12. We render such judgment as the trial court should have rendered. *Agan*, 940 S.W.2d at 81; *Rubalcada*, 960 S.W.2d at 411–12.

#### Permanent Injunction

■ The grant of a permanent injunction is ordinarily within the trial court's sound discretion, and on appeal, review of the trial court's action is limited to whether the action constituted a clear abuse of discretion. *Morris v. Collins*, 881 S.W.2d 138, 140–41 (Tex.App.—Houston [1st Dist.] 1994, writ denied). Where the facts conclusively show a party is violating the substantive law, the trial court should enjoin the violation, and in such case, there is no discretion to be exercised. *Green v. Unauthorized Practice of Law Comm.*, 883 S.W.2d 293, 296 (Tex.App.—Dallas 1994, no writ).

#### Discussion

We examine points of error two, three, and four together because of the interdependence among them. CMCC contends the trial court erred in granting the UPLC's motion for summary judgment because its business practices do not constitute the unauthorized practice of law. We disagree.

Section 81.101 of the Government Code defines the practice of law as:

[T]he preparation of a pleading or other document incident to an action or special proceeding or the management of the action or proceeding on behalf of a client before a judge in court as well as a service rendered out of court, including the *giving of advice* or the *rendering of any service requiring the use of legal skill or knowledge, such as preparing* a will, contract, or other *instrument, the legal effect of which under the facts and conclusions involved must be carefully determined.*

TEX. GOV'T CODE ANN. § 81.101(a) (Vernon 1988) (emphasis added).

 The statutory definition is not exclusive. TEX. GOV'T CODE ANN. § 81.101(b) (Vernon 1988). Courts inherently have the power to determine whether other services and acts not enumerated in the definition may constitute the practice of law. *Id.; Cortez,* 692 S.W.2d at 50. The practice of law embraces, in general, all advice to clients and all action taken for them in matters connected with the law. *Brown v. Unauthorized Practice of Law Comm.,* 742 S.W.2d 34, 41 (Tex.App.—Dallas 1987, writ denied).

Additionally, the legislature has broadly prohibited certain activities as the unauthorized practice as law. For example:

(a) A person, other than a person described in Subsection (b), may not charge or receive, either directly or indirectly, any compensation for all or any part of the *preparation of a legal instrument affecting title to real property, including* a deed, deed of trust, note, mortgage, and transfer or *release of lien.*

TEX. GOV'T CODE ANN. § 83.001 (Vernon 1998) (emphasis added).

 The question of whether the preparation and filing of mechanic's liens or lien affidavits constitutes the unauthorized practice of law has been considered once in Texas. In 1939, the Beaumont Court of Appeals, in *Stewart Abstract Co. v. Judicial Commission of Jefferson County,* held

Stewart Title Guaranty Company was engaged in the practice of law by preparing and executing *mechanic's liens,* notes, transfers, and extensions. 131 S.W.2d 686, 689 (Tex.Civ.App.—Beaumont 1939, no writ) (emphasis added). The court then held the trial court properly enjoined Stewart Title's acts constituting the unlawful practice of law. *Id.* at 690.

Apparently, only one state court of last resort has addressed this issue. In *The Florida Bar v. Carmel,* the Supreme Court of Florida enjoined a nonlawyer from sending letters threatening to file liens and from preparing and filing liens and releases of liens. 287 So.2d 305, 307 (Fla.1973). The court held the foregoing conduct constitutes the unauthorized practice of law in Florida and issued a permanent injunction restraining respondent from engaging in such acts. *Id.*

The uncontroverted facts in this case reveal CMCC was engaged in the unauthorized practice of law. CMCC prepares and files lien affidavits and claims and releases of liens, legal instruments affecting title to real property. The preparation of these documents involves the use of legal skill and knowledge. In preparing these documents, CMCC impliedly advises its clients of their legal rights and entitlement under the law. CMCC also prepares and sends letters to property owners interpreting home owner insurance policy provisions and advising them to make a claim against their title insurance policy in furtherance of perfection of the legal rights of its clients. When CMCC sends such letters to home owners, it impliedly advises them that they do in fact have legal rights and should make a claim. CMCC engages in these tactics to procure settlements with insurance companies in exchange for release of liens. Settling claims secures an individual's legal rights with respect to such claims, and involves the use of legal skill and knowledge.

 Additionally, we disagree with CMCC's reliance on section 53.054 of the Property Code. Section 53.054 of the Prop-

erty Code provides that "[t]he affidavit must be signed by the person claiming the lien or by another person on the claimant's behalf. ..." TEX. PROP.CODE ANN. § 53.054 (Vernon 1995). CMCC argues this provision permits anyone to sign a lien affidavit on behalf of a claimant, and as such, it is authorized to prepare, sign, and file mechanic's liens for its clients. This Property Code provision is inapplicable because it pertains only to those instances where the affiant no longer owns the claim because it was assigned to someone else. *Id.*

CMCC also relies on *Trane Co. v. Wortham,* 428 S.W.2d 417 (Tex.Civ.App.—Houston [1st Dist.] 1968, writ ref'd n.r.e.). In *Trane,* the *agent of the corporation that furnished the labor and materials* that served as the basis for the lien was permitted to sign the affidavit even though the claim for recovery had been assigned to someone else. *Id.* at 421. Here, CMCC is *not the provider* of the labor and materials it seeks a lien upon, yet it signs affidavits on behalf of those who were. As such, this situation is distinguishable from *Trane.*

Further, CMCC relies on *Hadnot v. Wenco Distributors,* 961 S.W.2d 232 (Tex. App.—Houston [1st Dist.] 1997, no writ), to assert that its filing of mechanic's liens is not prohibited by the unauthorized practice of law statutes. *Hadnot,* however, was not an unauthorized practice of law case and does not lend support to CMCC's position because it does not distinguish mechanic's liens from deeds of trusts for purposes of determining the unauthorized practice of law.

Finally, CMCC relies on *Unauthorized Practice of Law Comm. v. Jansen,* 816 S.W.2d 813 (Tex.App.—Houston [14th Dist.] 1991, writ denied), to assert its practices are no different from that of a public insurance adjuster perfecting and negotiating a claim for an insured. *Jansen* is distinguishable, however, because it does not involve the preparation, signing, and filing of documents in the real property records, but only documents filed with an insurance company. *Id.* at 813–14.

Viewing the facts most favorably to CMCC and resolving all doubts in its favor, we conclude CMCC's activities constitute the unauthorized practice of law. We hold the trial court properly rendered summary judgment permanently enjoining CMCC from continuing such practices.

We overrule points of error two, three, and four.

### Laches

■■■ In its fifth point of error, CMCC contends the doctrine of laches bars the UPLC's suit because the UPLC did not bring suit after conducting the 1983 investigation. We disagree.

■■■ The courts of this state have uniformly held that laches is not imputable to a government entity while the entity is performing a governmental function. *Reyna v. Attorney General of Texas,* 863 S.W.2d 558, 559 (Tex.App.—Fort Worth 1993, no writ); *Waller v. Sanchez,* 618 S.W.2d 407, 409 (Tex.Civ.App.—Corpus Christi 1981, no writ). The rationale behind the inapplicability of the doctrine is to allow governmental entities to enforce statutes intended protect the general public. *Waller,* 618 S.W.2d at 409.

The UPLC is a permanent entity in the State Bar, an administrative agency of the judicial department of government. *In re Nolo Press/Folk Law, Inc.,* 991 S.W.2d 768, 771–72 (Tex.1999). Therefore, because the UPLC was performing a governmental function when it brought suit against CMCC for engaging in the unauthorized practice of law, CMCC cannot assert the defense of laches.

We overrule point of error five.

### Immunity

#### Standard of Review

Summary judgment is proper when the movant shows there are no genuine issues of material fact and it is entitled to judgment as a matter of law. TEX.R. CIV. P.

166a(c); *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995); *Lawson v. B Four Corp.,* 888 S.W.2d 31, 34 (Tex.App.—Houston [1st Dist.] 1994, writ denied). In reviewing a summary judgment, we must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in its favor. *Randall's Food Mkts.,* 891 S.W.2d at 644, *Lawson,* 888 S.W.2d at 33.

 Lehmann moved for summary judgment asserting the affirmative defense of immunity. A properly pleaded affirmative defense, supported by uncontroverted summary judgment evidence, may serve as the basis for a summary judgment. *Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 494 (Tex.1991). When a defendant moves for summary judgment on its affirmative defenses, it must conclusively prove all the essential elements of its defenses as a matter of law, leaving no issues of material fact. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984).

### Discussion

In its seventh point of error, CMCC contends the summary judgment based on immunity granted in favor of Lehmann was improper. CMCC's complaint is based on Lehmann's testimony in a case in Brazoria County, and letters sent by Lehmann in the course of the UPLC's investigation of CMCC, as well as letters sent by Lehmann to solicit CMCC customers.

### Testimony

 At common law, the absolute immunity of parties and witnesses from subsequent liability for their testimony in judicial proceedings is well established. *Briscoe v. LaHue,* 460 U.S. 325, 331–32, 103 S.Ct. 1108, 1113, 75 L.Ed.2d 96 (1983); *Laub v. Pesikoff,* 979 S.W.2d 686 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). Any communication, even perjured testimony, made in the course of a judicial

proceeding, cannot serve as a basis for a suit in tort. *Bird v. W.C.W.,* 868 S.W.2d 767, 771 (Tex.1994); *Laub,* 979 S.W.2d at 689. The proper administration of justice requires full and free disclosure from witnesses unhampered by fear of retaliatory lawsuits. *Bird,* 868 S.W.2d at 772; *Laub,* 979 S.W.2d at 689.

 Appellants rely on *City of Brady v. Bennie,* 735 S.W.2d 275 (Tex.App.—Eastland 1987, no writ), for the proposition that the judicial communication privilege is limited to libel and slander cases, and does not extend to a case where tortious interference is alleged. We disagree. This Court has held that the judicial privilege is not limited to claims of libel or slander, and it should be applied to claims arising out of communications made in the course of judicial proceedings, regardless of the label placed on the claim.[1] *Laub,* 979 S.W.2d at 689. In addition, the Dallas Court of Appeals has held the privilege extends to claims for tortious interference. *Griffin v. Rowden,* 702 S.W.2d 692, 697–95 (Tex.App.—Dallas 1985, writ ref'd n.r.e.) (holding that notice of lis pendens, filed as part of judicial proceeding, is absolutely privileged and cannot form basis for tortious interference claim). As such, we conclude Lehmann's prior testimony in the Brazoria County suit was subject to the affirmative defense of absolute immunity.

### Letters Sent to Customers to Inform of Proceedings

 CMCC also asserts summary judgment in favor of Lehmann based on immunity was improper based on letters he sent during the course of the UPLC's investigation. We disagree. Lehmann sent letters to CMCC clients informing them that an enforcement proceeding and investigation had begun against CMCC, and specified which of CMCC's activities

---

1. This Court was interpreting the supreme court's holding that the privilege must extend beyond defamation actions in order to "avoid the circumvention [of the policy behind the privilege] by affording an almost equally unrestricted action under a different label." *Bird,* 868 S.W.2d at 772.

may be found to be illegal. Lehmann also asked for copies of any transactions and contacts with Crain and CCMC the customers may have had to aid the investigation.

Section 81.106 of the Government Code provides:

(a) The unauthorized practice of law committee, any member of the committee, or any person to whom the committee has delegated authority and who is assisting the committee is not liable for any damages for an act or omission in the course of the official duties of the committee.

(b) A complainant or a witness in a proceeding before the committee or before a person to whom the committee has delegated authority and who is assisting the committee has the same immunity that a complainant or witness has in a judicial proceeding.

TEX. GOV'T CODE ANN. § 81.106 (Vernon 1997). Therefore, the statute grants immunity for acts done in the course of official duties of the UPLC. In addition, one of the duties of the UPLC is to "seek the elimination of the unauthorized practice of law by appropriate actions and methods, including the filing of suits in the name of the committee." TEX. GOV'T CODE ANN. § 81.104 (Vernon 1997).

The letters CMCC complains of were sent by Lehmann in his official capacity as Houston chairman of the UPLC, as part of the UPLC's investigation of CMCC. The letters were written on the UPLC's letterhead, and were signed by Lehmann as chairperson of the committee. The letters merely advised that enforcement proceedings and an investigation had begun, and asked for any information to assist in the investigation. As such, the letters were sent by Lehmann in the course and scope of his duty to seek the elimination of the unauthorized practice of law and are also covered by governmental immunity.

### Letters Sent to Customers as Solicitation

CMCC further asserts summary judgment was not properly granted in favor of Lehmann because Lehmann sent letters to CMCC clients soliciting them to retain his services as an attorney for the collection of unpaid debts. We disagree. As CMCC was engaged in the unauthorized practice of law, it has no cause of action as a matter of law for Lehmann's interference, if he interfered at all. Therefore, summary judgment was properly granted in favor of Lehmann.

We overrule point of error seven.

### Did Summary Judgment Exceed the Motions?

In its final point of error, CMCC asserts the summary judgment was improper because it disposed of issues not covered in the motions, specifically CMCC's counterclaims and other causes of action pleaded by the UPLC. We disagree. The UPLC abandoned its other claims and went forward only under its authority to seek a permanent injunction. Additionally, CMCC's counter-claims against Lehmann were addressed in Lehmann's motion for summary judgment. We overrule the eighth point of error.

We affirm the judgment of the trial court.