In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-02-00117-CV
______________________________


KUBALA PUBLIC ADJUSTERS, INC., D/B/A
KUBALA AND COMPANY, JOHN H. KUBALA,
THOMAS A. ROSS, DEBORAH HUMBLE, RICHARD POLOSKI,
AND MIKE CONNAUGHTON, Appellants
Â 
V.
Â 
THE UNAUTHORIZED PRACTICE OF LAW COMMITTEE
FOR THE SUPREME COURT OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 152nd Judicial District Court
Harris County, Texas
Trial Court No. 2002-08173


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

Â Â Â Â Â Â Â Â Â Â Kubala Public Adjusters, Inc., d/b/a Kubala and Company, John H. Kubala,
ThomasÂ A. Ross, Deborah Humble, Richard Poloski, and Mike Connaughton (collectively,
"Kubala") appeal a permanent injunction prohibiting them from performing certain practices
related to their public insurance adjusting business. The basis for the injunction is that
such practices constitute the unauthorized practice of law. 
Â Â Â Â Â Â Â Â Â Â There are two major problems we confront in analyzing this case. First, after the
injunction was issued, the Legislature passed a new law in which it, for the first time,
officially created a category of licensed public adjusters. Thus, the law has changed. 
Second, Kubala has stated to this Court that the facts have changed, because the parties
enjoined are in various stages of obtaining their adjuster's licenses or have withdrawn from
that type of pursuit. The Unauthorized Practice of Law Committee ("the Committee")
admits that both changes exist, but differ with Kubala on the extent of these changes or
their impact on this appeal.
Â Â Â Â Â Â Â Â Â Â Kubala contends the trial court abused its discretion by issuing the permanent
injunction because: 1) it is inconsistent with Texas statutory law; 2) it is inconsistent with
Texas caselaw; 3) the evidence is insufficient to support it; and 4) it violates the free
speech provisions of the federal and state constitutions.
Â Â Â Â Â Â Â Â Â Â Kubala Public Adjusters, Inc., is a public insurance adjusting company. Through its
agents and employees, including the individual appellants, it represents clients on a
contingent fee basis. Kubala contracts with clients to document and present first-party
claims to insurance companies, and has been doing so for over ten years. The
Unauthorized Practice of Law Committee sued Kubala, seeking an injunction declaring that
some of Kubala's business practices constituted the unauthorized practice of law in
violation of Tex. Gov't Code Ann. Â§ 81.101(a) (Vernon Supp. 2004).


 After a short trial, the
court permanently enjoined Kubala from sixteen specific business practices the court found
constituted the unauthorized practice of law. The unlawful practices, as set out in the
injunction, largely track the language of Tex. Pen. Code Ann. Â§Â 38.123 (Vernon 2003).


 
Â 
Â Â Â Â Â Â Â Â Â Â At the time the injunction was issued, there was no licensing provision for public
adjusters in Texas. Since that date, such a provision has been added by Tex. Ins. Code
Ann. art. 21.07-5 (Vernon Supp. 2004) (Texas Revised Civil Statutes), which allows a
person (including a "firm, company, association, organization, partnership, limited liability
company, or corporation") to act as a "public insurance adjuster" only when licensed by the
state. Â 
Â Â Â Â Â Â Â Â Â Â In a motion to continue oral argument, Kubala stated that the entirety of the lawsuit
below was based on the application of the common law to the practice of public insurance
adjusting and points to the law passed by the Legislature prohibiting common-law public
adjusting. Kubala states that, because the appeal is now moot, it should be dismissed and
the permanent injunction dissolved. Kubala also states that three of the five individual
appellants are not doing this work any more, one has been licensed, and the last, John
Kubala, and the company, are in the process of obtaining licenses.
Â Â Â Â Â Â Â Â Â Â The Committee opposes dissolution of the injunction, contending some activities
enjoined by the injunction are not part of the new statute. It points out, for example, that,
although the statute allows contingent fees, it is silent as to whether there can be an
"assignment" of the recovery for payment of the fees; the injunction prohibits such
assignments. The Committee also contends that assignment is in violation of Tex. Pen.
Code Ann. Â§ 38.123(a)(4), because the Code prohibits nonattorneys from accepting
assignments of part of a cause of action.
Â Â Â Â Â Â Â Â Â Â The Committee also contends the new statute does not affect the parts of the
injunction forbidding Kubala from (1) interpreting insurance policies, (2) advising their
clients about rights and obligations under insurance policies, (3) advising their clients about
whether they should make certain claims, (4) advising clients whether they should accept
an offered sum in settlement of a claim, or (5) advertise they can do any of these things. 
These parts of the injunction, the Committee argues, do not conflict with the language of
the new statute and should be left intact.
Â Â Â Â Â Â Â Â Â Â Kubala has attempted to file with this Court affidavits from the individual appellants
and from James Grotta, M.D., to show the current situation of Kubala as either licensed
adjusters, seeking to become such, or having left the business. We cannot permit such
filings. We are a reviewing court, not a fact-finding court, and we cannot consider newly
created evidence which was necessarily not presented to the trial court. The only situation
in which we can consider affidavit evidence is when the jurisdiction of this Court to hear the
appeal is at issue. See Yarbrough v. State, 57 S.W.3d 611, 615 (Tex. App.âTexarkana
2001, pet. ref'd). In our review, therefore, we are constrained to review the factual situation
as it existed at the time the trial court issued the injunction.
Permanent InjunctionâAppealability
Â Â Â Â Â Â Â Â Â Â This is a permanent injunction and is thus appealable. A permanent injunction that
disposes of all issues and parties is a final, appealable judgment. Striedel v. Striedel, 15
S.W.3d 163, 164 (Tex. App.âCorpus Christi 2000, no pet.); James v. Hubbard, 985
S.W.2d 516, 517 (Tex. App.âSan Antonio 1998, no pet.).
Permanent InjunctionâReconsideration by Trial Court
Â Â Â Â Â Â Â Â Â Â A trial court, nonetheless, retains jurisdiction to review, open, vacate, or modify a
permanent injunction on a showing of changed conditions. See City of San Antonio v.
Singleton, 858 S.W.2d 411, 412 (Tex. 1993) (citing Smith v. O'Neill, 813 S.W.2d 501, 502
(Tex. 1991)); Cooke v. Cooke, 65 S.W.3d 785, 788 (Tex. App.âDallas 2001, no pet.). The
authority to exercise that jurisdiction must be balanced against principles of res judicata. 
Singleton, 858 S.W.2d at 412.


 Whether right or wrong, a permanent injunction is not
subject to impeachment in its application to the conditions that existed at its making. Id.
(citing United States v. Swift & Co., 286 U.S. 106, 119 (1932)). However, a court cannot
be required to ignore significant changes in law or facts if the court is "satisfied that what
it has been doing has been turned through changing circumstances into an instrument of
wrong." Sys. Fed'n No. 91 v. Wright, 364 U.S. 642, 647 (1961) (quoting Swift & Co., 286
U.S. at 114â15). Thus, the trial court would also have the authority to alter its injunction
if the changed condition consists of a change in controlling law. In other words, the trial
court has authority to amend, alter, or dissolve the injunction if either the factual situation
or the controlling law has changed since its entry. 
Standard of Review on Direct Appeal
Â Â Â Â Â Â Â Â Â Â A permanent injunction must not grant relief which is not prayed for nor be more
comprehensive or restrictive than justified by the pleadings, the evidence, and the usages
of equity. Holubec v. Brandenberger, 111 S.W.3d 32, 39 (Tex. 2003). Nor should a
decree of injunction be so broad as to enjoin a defendant from activities which are a lawful
and proper exercise of his or her rights. Id. at 39â40. We review the granting or denial of
a permanent injunction for an abuse of discretion. Operation Rescue-Nat'l v. Planned
Parenthood, 975 S.W.2d 546, 560 (Tex. 1998); Beathard Joint Venture v. W. Houston
Airport Corp., 72 S.W.3d 426, 432 (Tex. App.âTexarkana 2002, no pet.). Injunctive relief
may only be granted on a showing of (1) a wrongful act, (2) imminent harm, (3) irreparable
injury, and (4) the absence of an adequate remedy at law. Coca-Cola Co. v. Harmar
Bottling Co., 111 S.W.3d 287, 297 (Tex. App.âTexarkana 2003, pet. granted); Priest v.
Tex. Animal Health Comm'n, 780 S.W.2d 874, 875 (Tex. App.âDallas 1989, no writ). 
Where the facts conclusively show that a party is violating the substantive law, the trial
court should enjoin the violation, and in such a situation, there is no discretion to be
exercised. Crain v. Unauthorized Practice of Law Comm., 11 S.W.3d 328, 332 (Tex.
App.âHouston [1st Dist.] 1999, pet. denied); Green v. Unauthorized Practice of Law
Comm., 883 S.W.2d 293, 296 (Tex. App.âDallas 1994, no writ); Priest, 780 S.W.2d at
876.
Â Â Â Â Â Â Â Â Â Â The question before this Court involves the impact of the newly enacted legislation
on individuals who are not licensed public adjusters. The Committee has suggested we
affirm the judgment, but modify the injunction. See generally Safeguard Bus. Sys., Inc. v.
Schaffer, 822 S.W.2d 640, 644â45 (Tex. App.âDallas 1991, no writ); Muniz v. State, 575
S.W.2d 408, 414â15 (Tex. Civ. App.âCorpus Christi 1978, writ ref'd n.r.e.). In so doing,
the Committee suggests we parse the language of the current statute into the extensive
restrictions written into the injunction.
Â Â Â Â Â Â Â Â Â Â We cannot do what the Committee suggests. Under the facts as we are bound to
take them, the current statute cannot apply to Kubala because they are not licensed public
adjusters. In this situation, we cannot opine on the nature and state of the law as to
licensed public adjusters where the facts show that licensed public adjusters were not the
subject of the injunction. We are prohibited from issuing an advisory opinion, the
distinctive feature of which is that it decides an abstract question of law without binding the
parties. Valley Baptist Med. Ctr. v. Gonzalez, 33 S.W.3d 821, 822 (Tex. 2000); Tex. Ass'n
of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 444 (Tex. 1993); see Tex. Const. art. II,
Â§Â 1. If we modified the injunction so as to apply the licensure statute, it could not apply to
these defendants, because they are obviously and necessarily not licensed. We would
therefore be issuing an advisory opinion, which is outside the constitutional bounds of our
authority.
Â Â Â Â Â Â Â Â Â Â Nevertheless, we must determine what impact the change in law would have on the
injunction as applied to these unlicensed individuals. A change in the applicable law during
the pendency of an appeal will be given effect by a reviewing court. Blair v. Fletcher, 849
S.W.2d 344, 345 (Tex. 1993). The change, in this case, is drastic. Under Article 21.07-4,
Section 2, the statute provides that "[n]o person shall act as or hold himself out to be an
adjuster in this state unless then licensed therefor by this state, . . . . " except while in a
training period and after meeting specific requirements. The statute goes on to state that
any violation is a misdemeanor punishable by a fine and/or six months' confinement. Tex.
Ins. Code Ann. art. 21.07-4, Â§ 2 (Vernon Supp. 2004) (Texas Revised Civil Statutes).
Â Â Â Â Â Â Â Â Â Â In a situation such as this, in light of the availability of criminal prosecution, we are 
conscious of the general precept that "enforcement of criminal statutes is normally a matter
for criminal courts, by prosecutions conducted by the appropriate prosecuting official
empowered by law to do so." Robinson v. Jefferson County, 37 S.W.3d 503, 511 (Tex.
App.âTexarkana 2001, no pet.).
Â Â Â Â Â Â Â Â Â Â Another matter broached by the Committee is whether we could appropriately
modify the injunction so as to reflect the new realities of the law in a fashion that would
appropriately restrict Kubala's activities in connection with their business as public
adjusters. The difficulty in doing so lies in the facts. Under the facts as we are bound to
review them, none of these parties are licensed public adjusters. Therefore, by statutory
fiat, they cannot engage in public adjusting at all. The new statute thus necessarily
precludes Kubala from engaging in all of the activities restrained by the current version of
the injunctionâbecause the purpose of each section of the injunction is to enjoin them
from engaging in specific actions in the course of their business as public adjusters.
(Againâunlicensed public adjusters.) 
Â Â Â Â Â Â Â Â Â Â The Committee further suggests modifications to the injunction that would bring it
in line with the new statute. Such modifications, however, would require analysis and
application of the new statute regulating licensed public adjustersâwhich, as we have
repeatedly stated, is outside the facts of this case. We have already explained why we
cannot undertake such an analysis. It would also be irrelevant under these facts, because
the regulations on licensed adjusters would obviously not apply to unlicensed adjusters. 
Â Â Â Â Â Â Â Â Â Â The short of it is, unlike the situation when this injunction was issued, a public
adjuster can only lawfully do business in Texas as permitted by the licensing statute. We
conclude that any analysis of the scope of the new Insurance Code provisions and any
potential conflict between those provisions and the Penal Code, as well as any possible
application of the general strictures forbidding the unauthorized practice of law, is an
analysis outside the boundaries of this case. 
Â Â Â Â Â Â Â Â Â Â As previously recognized, both parties have admitted the facts have changed,
although they disagree as to the extent of the change. They must further acknowledge that
the controlling law has also changed radically since the injunction was entered. Under
these unique circumstances, we affirm the injunction issued by the trial court, based on its
application of the law as it existed at that time to the facts as they then existed. That does
not, of course, prevent either party from immediately asking the trial court to reconsider the
scope or content of the injunction based on the change in facts (which the trial court can
consider) and the changes in the controlling law.
Â Â Â Â Â Â Â Â Â Â We affirm the judgment. 
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Donald R. Ross
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Date Submitted:Â Â Â Â Â Â March 11, 2004
Date Decided:Â Â Â Â Â Â Â Â Â April 2, 2004



es her less likely to consider the consequences of her answers. The
child in Hunt was also not placed under any threat of punishment. Here, the older A. H. has already
been placed under a disciplinary threat, making her much more likely to consider the consequences
of her answers before making them. Unlike Hunt, the circumstances in this case suggest reflective
consideration and allow an opportunity for conscious fabrication.

 Considered in light of the circumstances, the statements of A.Â H. are not sufficiently reliable. 
The circumstances do not strongly suggest A.Â H. would be incapable of falsehood or otherwise
suggest accuracy. The statements of A.Â H. comprise a reflective, narrative account of past events. 
They were made in response to direct, specific questions that were calculated to elicit the type of
responses given, even though the contents of the responses were unanticipated. A statement that is
simply a narrative of past acts or events is distinct from an excited utterance and does not qualify
under Rule 803(2) regardless of how soon after the event it is made. First Southwest, 769 S.W.2d
at 959 (citing Gulf, C. & S.F.R. Co. v. Moore, 69 Tex. 157, 6 S.W. 631 (1887)). A.Â H. may have
been upset, but that does not make her statements excited utterances. Her age and the threat of
punishment make the statements more likely to be reflective and premeditated. The danger of
allowing expansion of the excited-utterance exception to include this type of information is that it
will become as broad and indeterminate as the former res gestae exception. (6) 

 The statements of A.Â H. do not fall within the excited-utterance exception to the hearsay rule. 
We cannot say the statements in issue were spontaneous and unreflecting, or made without the
opportunity to contrive or misrepresent. See Sellers, 588 S.W.2d at 918. This conclusion is not
within the zone of reasonable disagreement. Admission of these statements was error, amounting
to an abuse of discretion by the trial court. See Salazar, 38 S.W.3d at 153-54. Glover's third and
fourth points of error are sustained.

 In his fifth point of error, Glover argues the trial court erred in admitting the out-of-court
statements of A.Â H. in violation of Glover's right to confront witnesses under the United States and
Texas Constitutions.

 Admission of hearsay evidence against a criminal defendant implicates the Confrontation
Clause of the Sixth Amendment because the defendant is denied the opportunity to confront the out-of-court declarant. Guidry v. State, 9 S.W.3d 133, 149 (Tex. Crim. App. 1999), cert. denied, 531
U.S. 837, 121 S.Ct. 98, 148 L.Ed.2d 57 (2000) (citing Ohio v. Roberts, 448 U.S. 56, 63, 100 S.Ct.
2531, 65 L.Ed.2d 597 (1980)). In considering this constitutional issue, the decision of the trial court
is reviewed de novo. Guzman v. State, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). Not all hearsay
violates the Confrontation Clause. A hearsay statement is per se reliable for Confrontation Clause
purposes if it falls within a firmly rooted exception to the hearsay rule. Guidry, 9 S.W.3d at 149-50
(citing White v. Illinois, 502 U.S. 346, 356, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992)). Although the
evidence in this case does not fall within a firmly rooted exception to the hearsay rule, it may
nonetheless be sufficiently reliable for Confrontation Clause purposes if it has "particularized
guarantees of trustworthiness." Guidry, 9 S.W.3d 133 at 149 (citing Idaho v. Wright, 497 U.S. 805,
816, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990); Roberts, 448 U.S. at 66).

 The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall
enjoy the right to . . . be confronted with the witnesses against him." U.S. Const. amend. VI. The
central concern of the Confrontation Clause is to ensure the reliability of evidence against a
defendant by subjecting it to rigorous testing in an adversarial proceeding before the trier of fact. 
Lilly v. Virginia, 527 U.S. 116, 124-25, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (quoting Maryland
v. Craig, 497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990)). Some statements that do not
fit into a firmly rooted hearsay exception may have other particularized guarantees of trustworthiness
that serve as a proxy for cross-examination, allowing the statements to be admitted without offending
the confrontation rights guaranteed to a criminal defendant. 

 The trustworthiness of hearsay evidence must be evaluated in light of the totality of the
circumstances, considering only those circumstances that surround the making of the statement and
that render the declarant particularly worthy of belief. Guidry, 9 S.W.3d at 150. Other evidence
admitted at trial cannot be considered in determining trustworthiness. Id. The trustworthiness
requirement is satisfied if cross-examination would be of only "marginal utility." Muttoni v. State,
25 S.W.3d 300, 307 (Tex. App.-Austin 2000, no pet.) (citing Lilly v. Virginia, 527 U.S. 116, 134,
119 S.Ct. 1887, 144 L.Ed.2d 117 (1999)). Other evidence admitted at trial cannot be used to
corroborate the veracity of the hearsay or to support a claim that the statement bears the requisite
guarantees of trustworthiness. Muttoni, 25 S.W.3d at 307 (citing Lilly, 527 U.S. at 135 (holding
State may not bootstrap on trustworthiness of other evidence)). As the court in Guidry stated, "there
must be 'an affirmative reason arising from the circumstances in which the statement was made'
which provides a basis for rebutting the presumption that a hearsay statement is not reliable." 
Guidry, 9 S.W.3d at 150 (quoting Wright, 497 U.S. at 819). 

 Here, the circumstances under which these statements were made raise affirmative
possibilities for rebutting the presumption of unreliability. The reliability of the statements turns on
whether A. H. was influenced 1) by her mother's threat of punishment and 2) by her mother's
statement that she already knew everything, so that not answering truthfully would increase her
punishment. Possibilities are not affirmative reasons, however, and these questions are unanswered. 

 The circumstances raise several possibilities that call the reliability of the testimony into
question. A. H. had motives to fabricate. The statements to her mother could have been calculated
to shift or spread the blame, or divert attention away from her own culpability. The defense argued
that A. H. was shifting blame from a classmate her own age to an older man that she knew from her
uncle's restaurant. The fact that A. H. may have felt subject to punishment only exacerbated the risk
of unreliability. Without having her available for cross-examination, there was no way for the jury
to assess whether A.Â H. really told the truth, or whether she told her mother a story either to diminish
her own punishment or to prevent punishment of a schoolmate. Without having A.Â H. available for
cross-examination, there was no way for the jury to assess whether she believed her mother "knew
everything" or whether such a belief would have any impact on A.Â H.'s veracity. We cannot say that
cross-examination of A.Â H. on these matters would be of only marginal utility.

 The interrogation format of the discussion, combined with the age of the declarant, suggest
a lack of spontaneity. Further undermining the reliability of this testimony is the fact it was not
provided by an independent third party, but by a witness with a strong bias against Glover. On
balance, the circumstances weigh against reliability and therefore against admissibility.

 The State has failed to demonstrate this evidence was sufficiently reliable, either by showing
that it conformed to a firmly rooted hearsay exception or that there were other particularized
guarantees of trustworthiness that served as a proxy for cross-examination, allowing the statements
to be admitted without offending Glover's confrontation rights. A de novo review of the record
shows that admission of this hearsay testimony was error amounting to a violation of Glover's right
to confront witnesses against him under the Sixth Amendment to the United States Constitution and
Article I, § 10 of the Texas Constitution. U.S. Const. amend. VI; Tex. Const. art. I, Â§ 10. Glover's
fifth point of error is sustained.

 The error in admitting these statements is a constitutional error because the admission of
hearsay implicates rights guaranteed by the Confrontation Clause. Guidry, 9 S.W.3d at 149. 
Because it is of constitutional dimension, the error must be analyzed under the constitutional
harmless error standard. See Tex. R. App. P. 44.2(a); Guidry, 9 S.W.3d at 149-50. The trial court's
judgment can only be affirmed if we determine beyond a reasonable doubt the alleged error did not
contribute to Glover's conviction or punishment. Tex. R. App. P. 44.2 (a); see also Mosley v. State,
983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (stating constitutional errors should be analyzed in
same manner as under former Rule 81(b)(2)). 

 The testimony regarding A. H.'s hearsay statements covers 17 of the 138 pages of testimony
in the trial transcript. This evidence was also the focal point of the closing argument for both sides. 
The testimony recounted two specific sexual encounters and was much more detailed than any of
the other evidence offered by the State. This was also the only source of specific evidence of the
type of sexual contact: the testimony indicated "safe sex" and the use of a condom. It made the case
against Glover much stronger by reinforcing and elaborating on the other evidence available. This
evidence was emotional, powerful, and detailed. Its effect on the trial was that of dye spilled in a
water jar-all of the contents were tainted equally and inseparably.

 Because of the nature of the testimony, and because of the central role this evidence played
in the trial and argument, we cannot conclude beyond a reasonable doubt this error did not contribute
to the conviction. 

 The statements of A. H. do not qualify as excited utterances, and admitting these statements
was constitutional error. Further, on this record, we cannot say beyond a reasonable doubt the
alleged error did not contribute to Glover's conviction. 

 The judgment of the trial court is hereby reversed, and the case remanded for a new trial. 




 Ben Z. Grant

 Justice


Date Submitted: September 10, 2001

Date Decided: February 8, 2002


Publish
1. Evidence conflicted as to Glover's precise age, but all witnesses put his age between twenty-six and twenty-eight at the time of the offense.
2. By the time of the trial, both A. H. and her father had died. The circumstances of their
deaths were not in issue at trial.
3. She stated on direct examination that Glover admitted he "had sex with" A.Â H., but on cross-
examination allowed that the phrase may have been "slept with." Glover urges on appeal that this
shows the testimony is not credible. The jury determines the credibility of the evidence, not the
appellate court. See Williams v. State, 692 S.W.2d 671, 676 (Tex. Crim. App. 1984).
4. A. H. was over age twelve, so the State could not offer her statements through an outcry
witness under Tex. Code Crim. Proc. Ann. art. 38.072 (Vernon Supp. 2002). Even had she been
twelve or younger, A.Â H. was unavailable to testify, so the State would have been forced to find an
alternative basis for admitting the hearsay statements.
5. This is distinct from Hunt v. State, 904 S.W.2d 813, 815 (Tex. App.-Fort Worth 1995, pet.
ref'd), where the question was generalized and did not anticipate any particular response.
6. See notes 2 through 5 and accompanying text in 2 Goode, Wellborn & Sharlot, Texas
Practice: Texas Rules of Evidence: Civil and Criminal Â§ 803.3 (2nd ed. 1993), for criticism
of the nebulous res gestae formulation.