**WARD COUNTY IRRIGATION DISTRICT NO. 1, Ward County Irrigation District No. 3, and Reeves County Water Improvement District No. 2, Appellants,**

v.

**RED BLUFF WATER POWER CONTROL DISTRICT, Appellee.**

No. 08–04–00322–CV.

Court of Appeals of Texas, El Paso.

June 30, 2005.

Doug Caroom, Delgado, Acosta & Bickerstaff, Health, P.L.L.C., Austin, Glenn Jarvis, Law Office of Glenn Jarvis, McAllen, for appellants.

Robert Scogin, Kermit, for appellee.

Before BARAJAS, C.J., McCLURE, and CHEW, JJ.

## *OPINION*

ANN CRAWFORD McCLURE, Justice.

Ward County Irrigation District No. 1 (Ward District 1), Ward County Irrigation District No. 3 (Ward District 3), and Reeves County Water Improvement District No. 2 (Reeves District 2) appeal from a judgment declaring that the two irrigation districts, following their conversion from water improvement districts, are no longer members of the Red Bluff Water Power Control District (Red Bluff District), and therefore, are not entitled to elect a director to serve on the Red Bluff District's board of directors. We reverse and render.

### FACTUAL AND PROCEDURAL SUMMARY

In 1933, the Legislature enacted Articles 7807d and 7807dd which provided for the

organization and government of water improvement districts and water power control districts.[1] Ward District 1, Ward District 3, Reeves District 2, and four other water improvement districts have been member districts or divisions of the Red Bluff District since 1934 when the latter became a water power control district and obtained authority to construct and maintain the Red Bluff Dam and Reservoir on the Pecos River. Since the Red Bluff Dam was constructed, a primary function of the Red Bluff District and its seven divisions has been to supply irrigation water to landowners for agricultural purposes. As required by Article 7807d, the Red Bluff District entered into a master contract with its member divisions in 1934. The master contract specifies the rights and obligations of the parties and establishes each division's *pro rata* interest in the Red Bluff District and the water to be distributed.

Each of the seven divisions is governed by its own board of directors elected from the district. The Red Bluff District is also governed by a board of directors with one director elected from each division. In elections conducted in water improvement districts and water power control districts, voter qualification is based upon residency in the district. In 2001 and 2003, respectively, Ward District 1 and Ward District 3 converted from water improvement districts operating under Chapter 55 of the Water Code to limited purpose irrigation districts operating under Chapter 58 of the Texas Water Code.[2] Both Ward District 1 and Ward District 3 expressly reserved their powers under Texas Water Code Sections 55.165 (pertaining to drainage ditches and levees) and 55.193 (pertaining to selling water rights) so that they could continue to function in harmony within the Red Bluff District. As a result of the conversion, voter qualification in elections conducted by the irrigation districts is now based upon land ownership as specified in Section 58.022 of the Water Code.

An election for the Red Bluff District board of directors was scheduled to be held on May 15, 2004 in Ward District 1 and Ward District 3. Because Tom Nance (Ward District 1) and Ava Gerke (Ward District 3) were unopposed, the election was canceled and the two candidates were declared to be the elected directors of their respective districts. The Red Bluff District, however, refused to seat them on the board of directors.[3]

The Red Bluff District subsequently filed suit seeking a declaratory judgment that Ward District 1 and Ward District 3 were no longer members of the Red Bluff District, and therefore, were not entitled to have directors on the Red Bluff District board of directors. Ward District 1 and Ward District 3 answered and counter-

1. Articles 7807d and 7807dd are considered local or special laws, and consequently, were not carried into the Water Code. *See* Tex. Water Code Ann. § 1.001(d)(Vernon 2000). They also have been dropped from Vernon's Texas Civil Statutes and can only be found in the session laws. *See* Act of April 14, 1933, 43rd Leg., R.S., ch. 76, 1933 Tex. Gen. Laws 154 (Article 7807d), *amended by* Act of October 13, 1933, 43rd Leg., 1st C.S., ch. 19, 1933 Tex. Gen. Laws 54 (Article 7807dd). For convenience, we will refer to them as Articles 7807d and 7807dd.

2. Ward District 3 changed its name from Ward County Water Improvement District No. 3 to Ward County Irrigation District No. 3. Ward District 1 retained its name as Ward County Irrigation District No. 1.

3. Because Nance and Gerke were unopposed, the elections were cancelled pursuant to Section 2.053(a) of the Election Code and both candidates were certified as elected as of May 15, 2004. Tex. Election Code Ann. §§ 2.052, 2.053(a)(Vernon 2003 & Vernon Supp.2004–05).

claimed for declaratory and injunctive relief. Reeves District 2 filed a petition in intervention in support of the Ward districts.

Following a bench trial, the court entered judgment in favor of the Red Bluff District declaring that: (1) Ward District 1 and Ward District 3 are no longer members of the Red Bluff District and are not entitled to elect from their districts a member to the Red Bluff board of directors; (2) the judgment does not abrogate the contractual rights and obligations of the Ward District under the master contract; and (3) the judgment does not abrogate the rights of the Ward Districts to receive funds from the Pecos River Compact account.[4] The trial court found against the Ward and Reeves Districts on their claims for affirmative relief and awarded attorney's fees to the Red Bluff District. At the request of the parties, the trial court entered findings of fact and conclusions of law. Among other things, the court concluded that its judgment did not disenfranchise any qualified voter residents within the Red Bluff District boundaries because these voters may vote in the nearest division to their residence. The Ward and Reeves Districts filed notices of appeal.

## STATUS OF THE WARD DISTRICTS

Raising multiple issues, all three Appellants challenge the trial court's conclusion that the conversion of Ward District 1 and Ward District 3 from water improvement districts to irrigation districts disqualifies them as organized divisions of the Red Bluff District entitled to elect a director to serve on Red Bluff's board of directors. Appellants argue that Articles 7807d and 7807dd must be considered in light of and harmonized with subsequent changes in law, including the enactment of Section 58.038 which permits a water improvement district to convert to a Chapter 58 irrigation district. According to Appellants, these changes in the law since 1933 indicate that application of Article 7807d must not be restricted to water improvement districts. As the facts are undisputed, this issue turns on the construction of Articles 7807d and 7807dd and various provisions of the Water Code.

### *Standard of Review*

Statutory construction is a question of law which we review *de novo*. *Texas Department of Transportation v. Needham*, 82 S.W.3d 314, 318 (Tex.2002). In interpreting a statute, a court must diligently attempt to ascertain legislative intent and must keep in mind the old law, the evil, and the remedy. TEX. GOV'T CODE ANN. § 312.005 (Vernon 2005). Further, we must interpret the statute in a manner that gives effect to the plain meaning of the statute's words and effectuates the Legislature's intent. *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex.2002). Legislative intent should be determined by reading the language used and construing the

---

4. In 1949, Texas and New Mexico entered into a compact dividing the water of the Pecos River between the two states. *See Texas v. New Mexico*, 482 U.S. 124, 126, 107 S.Ct. 2279, 2283, 96 L.Ed.2d 105 (1987). A dispute subsequently arose between the states regarding how much water Texas should receive, and in 1974, Texas filed an original action in the United States Supreme Court to resolve it. *See Texas v. New Mexico*, 482 U.S. at 126–27, 107 S.Ct. at 2282–83. After years of litiga-

tion, the Supreme Court ordered New Mexico to pay Texas $13.8 million as money damages for breach of the compact, and this amount was credited to the Pecos River Compact account. *See* Acts of 1991, 72nd Leg., 1st C.S., ch. 4, § 10.01, 1991 TEX. GEN. LAWS 111. The principal amount and a portion of the accrued interest was distributed to the Red Bluff District for distribution to its seven member districts. *Id.*

statute in its entirety. *See In re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371, 380 (Tex.1998); *Taylor v. Firemen's & Policemen's Civil Service Commission*, 616 S.W.2d 187, 190 (Tex. 1981). We should read every word, phrase, and expression as if it were deliberately chosen, and presume that words excluded from the statute were excluded purposefully. *Gables Realty Ltd. Partnership v. Travis Central Appraisal District*, 81 S.W.3d 869, 873 (Tex.App.-Austin 2002, pet. denied). We must also presume that: (1) compliance with the state and federal constitutions is intended; (2) the entire statute is intended to be effective; (3) a just and reasonable result is intended; (4) a result feasible of execution is intended; and (5) public interest is favored over any private interest. TEX. GOV'T CODE ANN. § 311.021. Regardless of whether the statute is ambiguous, we may consider, among other matters, the object the statute seeks to obtain, the circumstances under which the statute was enacted, legislative history, common law or former statutory provisions, including laws on the same or similar subjects, and the consequences of a particular construction. TEX. GOV'T CODE ANN. § 311.023. Additionally, the court must consider "the consequences that would follow" from its construction of a statute and avoid absurd results. *Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 249 (Tex.1991). Finally, we presume that the Legislature enacted a statute with complete knowledge of the existing law and with reference to it. *Acker v. Texas Water Commission*, 790 S.W.2d 299, 301 (Tex.1990).

### Historical Background

A review of the historical background of Texas law enacted to encourage irrigation in the arid parts of the state is helpful to our analysis of Articles 7807d and 7807dd. In 1889, the Legislature enacted the first law to encourage irrigation and provide for the acquisition of the right to the use of water in the arid parts of the state. *See* Act of March 19, 1889, 21st Leg., ch. 88, 1889 TEX. GEN. LAWS 100. That Act declared that the unappropriated waters of every river or natural stream within the arid portions of the state are the property of the public and may be acquired for irrigation, domestic and other beneficial uses. *Id.* It provided for the construction and maintenance of canals, ditches, reservoirs, and wells for irrigation by corporations formed and chartered under the Act. *Id.* Corporations so created could acquire land and borrow money for the construction, maintenance, and operation of its canals, ditches, flumes, feeders, reservoirs, and wells, and could issue bonds and mortgage its corporate property to secure the payment of any debt contracted for these purposes. *Id.*

In 1904, the citizens of Texas approved a constitutional amendment which authorized any political division or defined district to authorize, by a two-thirds vote, the issuance of bonds, the levy and collection of taxes to pay the interest thereon, and to provide a sinking fund for the bonds' redemption. TEX. CONST. art. 3, § 52(b). The bonds could be issued for (1) the improvement of rivers, creeks, and streams to prevent overflows, and to permit navigation or irrigation; and (2) the construction and maintenance of pools, lakes, reservoirs, dams, canals and waterways for the purposes of irrigation, drainage or navigation. *Id.* The amount of bonds issued by the district could not exceed one-fourth of the assessed valuation of real property within the district. *Id.* Pursuant to Article 3, § 52(b), the Legislature in 1905 enacted legislation authorizing the creation of public irrigation districts. *See* Acts of 1905, 29th Leg., R.S., ch. 122, 1905 TEX. GEN. LAWS 235; *see also Hidalgo*

*County Water Control & Improvement District No. 1 v. Hidalgo County,* 134 S.W.2d 464, 467 (Tex.Civ.App.-San Antonio 1939, writ ref'd).

In 1913, the Legislature repealed the 1905 law and enacted a new law pertaining to irrigation districts. *See* Acts of 1913, 33rd Leg., R.S., ch. 172, 1913 Tex. Gen. Laws 380; Acts of 1913, 33rd Leg., R.S., ch. 172, § 105, 1913 Tex. Gen. Laws 408. Just four years later, the Legislature repealed the 1913 law and replaced it with a new law pertaining to water improvement districts. Act of March 19, 1917, 35th Leg., R.S., ch. 87, 1917 Tex. Gen. Laws 172; Act of March 19, 1917, 35th Leg., R.S., ch. 87, § 107, 1917 Tex. Gen. Laws 206; *see Hidalgo County Water Control & Improvement District,* 134 S.W.2d at 467. Irrigation districts organized under the former law, such as Ward County Irrigation District No. 1, were declared to be valid but would operate under the new law applicable to water improvement districts.

During this same legislative session, it was recognized that the restrictions imposed by Article 3, § 52(b) on the amount of indebtedness had the effect of restricting irrigation development rather than encouraging it. *See* Tex. Const. art. 3, § 52(b), *Interpretive Commentary.* Thus, Article 16, § 59, also known as the Conservation Amendment, was added to the constitution allowing the creation of conservation and reclamation districts as governmental agencies with the power to incur such debts as might be necessary. *Id.* At a called session of the same Legislature, two acts were passed for the purpose of effectuating the Conservation Amendment: the Canales Act[5] and the Laney Act.[6] The Canales Act provided for the creation of conservation and reclamation districts with the powers of water improvement districts and it authorized existing water improvement districts and irrigation districts to convert to a conservation and reclamation district with the benefits of the Conservation Amendment without a change of name.

In 1925, the Legislature enacted new legislation providing for the organization of water control and improvement districts under and in accordance with the provisions of Article 3, § 52 or Article 16, § 59. *See* Acts 1925, 39th Leg., R.S., ch. 25, 1925 Tex. Gen. Laws 86 (Tex.Rev.Civ.Stat. art. 7880–1 et seq. and later codified in Chapter 51 of the Texas Water Code).[7] This legislation permitted the conversion of any existing water improvement district or irrigation district to a water control and improvement district.[8] *See* Acts 1925, 39th Leg., R.S., ch. 25, § 143, 1925 Tex. Gen. Laws 132.

The Red Bluff District was initially created in 1928 as a water improvement district covering portions of Reeves, Ward, Loving, and Pecos Counties. It embraced within its boundaries seven water improvement districts: (1) Loving County Water Improvement District No. 1; (2) Reeves County Water Improvement District No. 2; (3) Ward County Water Improvement District No. 3; (4) Ward County Irrigation

---

5. Acts 1918, 35th Leg., 4th C.S., ch. 25, 1918 Tex. Gen. Laws 40.

6. Acts 1918, 35th Leg., 4th C.S., ch. 44, 1918 Tex. Gen. Laws 97. The Laney Act related solely to the creation of levee improvement districts.

7. In this same session, the Legislature amended the law pertaining to water improvement districts, but the changes are not pertinent to this case. Acts 1925, 39th Leg., R.S., ch. 152, 1925 Tex. Gen. Laws 361.

8. These provisions are now found in Sections 51.040–51.044 of the Water Code.

District No. 1;[9] (5) Ward County Water Improvement District No. 2; (6) Pecos County Water Improvement District No. 2; and (7) Pecos County Water Improvement District No. 3.

In the mid–1920's, the federal government approved a plan to construct a dam and reservoir on the Pecos River. Before the federal government would provide financing for the Red Bluff Dam project, the Public Works Administration insisted that a master district be created with authority over the seven water improvement districts. Thus, in 1933, the Legislature enacted Articles 7807d and 7807dd, which provided for the organization, reorganization, operation and government of water improvement districts and water power control districts. Pursuant to Article 7807d, the Red Bluff District converted from a water improvement district to a water power control district with authority to construct and maintain the Red Bluff Dam.[10] The seven water improvement districts within the boundaries of the Red Bluff District became its members and they operated under the law applicable to water improvement districts.

### Chapters 55 and 58

Much of the law pertaining to organized water districts has been codified, and it includes several types of general law districts:

- water control and improvement districts (Chapter 51);
- underground water conservation districts (Chapter 52);
- fresh water supply districts (Chapter 53);
- water improvement districts (Chapter 55);
- drainage districts (Chapter 56);
- levee improvement districts (Chapter 57);
- irrigation districts (Chapter 58);
- regional districts for water, sanitary sewer, drainage, and municipal solid waste disposal (Chapter 59); and
- navigation districts (Chapters 60–63).

Water improvement districts are governed by Chapter 55 of the Water Code. *See* TEX. WATER CODE ANN. § 55.021 (Vernon 2002). Irrigation districts created under the laws of 1905, 1913, and 1915 are governed by this same chapter. Tex.Water Code Ann. § 55.050.[11] A water improvement district may provide for irrigation of the land within its boundaries, and a district operating under Article 16, § 59 may furnish water for domestic, power, and commercial purposes. TEX. WATER CODE ANN. § 55.161(a), (b). A district may be formed to cooperate with the United States under federal reclamation laws for the purpose of (1) construction of irrigation and drainage facilities necessary to maintain the irrigability of the land; (2) purchase, extension, operation, or maintenance of constructed facilities; or (3) assumption, as principal or guarantor, of indebtedness to the United States on account of district lands. Tex.Water Code Ann. § 55.161(c). A water improvement district may purchase or construct improvements and facilities nec-

9. Despite its name, Ward County Irrigation District No. 1 functioned as a water improvement district from 1917 until 2001. It was created in 1913 at a time when all water districts were irrigation districts, but due to a change in law, it began functioning as a water improvement district in 1917.

10. According to the parties, the Red Bluff District is the only water power control district in Texas.

11. We agree with the trial court that the phase "irrigation districts" used in Articles 7807d and 7807dd does not refer to Chapter 58 irrigation districts.

essary for irrigation of land in the district, and if operating under Article 16, § 59, improvements and facilities necessary to supply, deliver, and sell water for domestic, power, and commercial purposes. TEX. WATER CODE ANN. § 55.163.

The Legislature enacted Chapter 58 in 1977 to provide for the creation of irrigation districts under and subject to authority, conditions, and restrictions of either Article 3, § 52 or Article 16, § 59. TEX. WATER CODE ANN. § 58.011 (Vernon 2004). Irrigation districts operating under Chapter 58 are limited purpose districts established primarily to deliver untreated water for irrigation and to provide for the drainage of lands and such other functions as are incidental to the accomplishment of these limited purposes. TEX. WATER CODE ANN. § 58.121. Any water improvement district (Chapter 55) or water control and improvement district (Chapter 51) which furnishes water for irrigation and does not furnish treated water or sewer services may be converted into a district operating under Chapter 58. TEX. WATER CODE ANN. § 58.038. A district that converts into an irrigation district has all powers, authority, functions, and privileges provided in Chapter 58 in the same manner and to the same extent as if the district had been created by that chapter. TEX. WATER CODE ANN. § 58.041. Significantly, a district which converts to an irrigation district under Section 58.038 may continue to exercise all necessary powers under any specific conditions provided by the chapter under which the district was operating before conversion, except it may not continue to engage in the treatment or delivery of treated water for domestic consumption or the construction, maintenance, or operation of sewage facilities. TEX. WATER CODE ANN. § 58.042(a). In order to continue to reserve its powers under Section 58.042(a), the governing body of the district must specify in the conversion order the specific statutory provisions which are to be preserved and made applicable to the operations of the district after conversion. TEX. WATER CODE ANN. § 58.042(b). It is undisputed that the Ward Districts complied with the requirements of Chapter 58 when they converted from water improvement districts to irrigation districts and their conversion orders specified their reserved powers.

### Public Policy and Legislative Intent

It is the public policy of the state to provide for the conservation and development of the state's natural resources, including (1) the control, storage, preservation, and distribution of the state's water resources for irrigation, power, and other useful purposes, and (2) the reclamation and irrigation of the state's arid, semiarid, and other land needing irrigation. See TEX. WATER CODE ANN. § 1.003 (public policy). Consistent with this policy, Texas water law has continuously evolved to meet the changing needs of the state, including the arid and semi-arid regions. Since the enactment of Articles 7807d and 7807dd, the Legislature has authorized the creation of many types of water districts, including Chapter 58 irrigation districts. By statutory enactment, the Legislature has insured that each district has the functions, powers, authority, rights, and duties that will permit accomplishment of the purposes for which it was created or the purposes authorized by the constitution, the Water Code, or any other law. See TEX. WATER CODE ANN. § 49.211(a)(Vernon Supp.2004–05)(powers and duties of general law districts); TEX. WATER CODE ANN. § 58.122 (powers and duties of irrigation districts). In an obvious effort to be responsive to changes in the various districts, the Legislature has permitted the conversion of one type of water district to another, and has allowed the converting

district to retain its former powers. Taking a restrictive approach to Articles 7807d and 7807dd is inconsistent with these expressions of legislative intent.

At the time Articles 7807d and 7807dd were enacted, there existed only two types of districts: water improvement districts, including those that had been initially created as irrigation districts under the prior law, and water control and improvement districts created pursuant to the 1925 law. Significant to the trial court's analysis, the Legislature initially included water control and improvement districts as a type of organized water district which could become a division of a water power control district, but it amended the statute during the first called session to omit water control and improvement districts from the purview of Article 7807d. Red Bluff District argues, as it did in the trial court, that this change in the statute reflects a legislative intent to restrict membership in water power control districts to water improvement districts. This is certainly one view of the change, but Appellants urge an alternative interpretation. Rather than evidencing an intent to forever restrict application of Article 7807d to water improvement districts, it is equally possible that the Legislature intended only to exclude the more powerful water control and improvement districts from inclusion in the water power control district. Given the overall approach by the Legislature to water law, the latter interpretation is the more reasonable one.

### Powers of Water Improvement Districts and Chapter 58 Irrigation Districts

The trial court also concluded that application of Articles 7807d and 7807dd must be restricted to water improvement districts because these districts have greater powers than the limited purpose irrigation districts. By statutory enactment, the Legislature has insured that both water improvement districts and irrigation districts have all functions, powers, authority, rights, and duties that will permit accomplishment of the purposes for which the district was created or the purposes authorized by the constitution, the Water Code, or any other law. See Tex. Water Code Ann. § 49.211(a)(powers and duties of general law districts). A similar provision is included in Chapter 58:

> The district has the functions, powers, authority, rights, and duties which will permit the accomplishment of the purposes for which it was created, including the investigation and, in case a plan for improvements is adopted, the construction, maintenance, and operation of necessary improvements, plants, works, and facilities, and the acquisition of water rights and all other properties, land, tenements, materials, borrow and waste ground, easements, rights-of-way, and everything considered necessary, incident, or helpful to accomplish by any practicable mechanical means any one or more of the objects authorized for the district, subject only to the restrictions imposed by the Constitutions of Texas or the United States. A district also may acquire property deemed necessary for the extension or enlargement of the plant, works, improvements, or service of the district.

Tex. Water Code Ann. § 58.122.

■ As we have already noted, Section 58.042 permits a water improvement district, after conversion to an irrigation district, to continue to exercise "all necessary specific powers under any specific conditions" provided by Chapter 55 under which the district was operating before conversion. Both Ward District 1 and Ward District 3 retained specific powers under Chapter 55 so that they could remain functional member divisions of the Red Bluff

District. There is no meaningful difference in powers between the Ward Districts following their conversion to Chapter 58 irrigation districts, and therefore, no practical reason to restrict the application of Articles 7807d and 7807dd to water improvement districts.

### Election Procedures

The trial court determined that Chapter 58 irrigation districts cannot be members of the Red Bluff District because Chapter 58 provides for a different election procedure. All water districts are governed by a board of directors with the number of directors established by the specific law applicable to the district. TEX. WATER CODE ANN. § 49.051 (Vernon 2000). Unless otherwise provided by law, the elections are conducted in accordance with the Election Code. TEX. WATER CODE ANN. § 49.101; *see* Article 7807d, § 9 (providing that all elections for directors of water power control districts to be held within each division must be done in accordance with the provisions of law providing for holding of elections within water improvement districts, and where consistent, with general election law). Except as otherwise provided by law, to be eligible to vote in an election, a person must:

- be a qualified voter as defined by Section 11.002 on the day the person offers to vote;
- be a resident of the territory covered by the election for the office or measure on which the person desires to vote; and
- satisfy all other requirements for voting prescribed by law for the particular election.

TEX. ELECTION CODE ANN. § 11.001.

Chapter 58 irrigation districts are distinct, however, because eligibility to vote in elections conducted by the district is based on ownership of irrigable land. Section 58.222 provides:

Notwithstanding the Election Code and any other law, a landowner or the landowner's registered representative under this subchapter is entitled to one vote in an election conducted by a district only if the landowner:

(1) owns at least one acre of irrigable land located within the district's boundaries that is subject to an assessment for maintenance and operating expenses under Section 58.305(a) and (b);

(2) is entitled to receive and use irrigation water delivered by the district through the district's irrigation facilities; and

(3) satisfies all other requirements for voting prescribed by this subchapter.

TEX. WATER CODE ANN. § 58.222.

■ Ordinarily, property ownership is not a valid qualification for voting because it is an unconstitutional denial of equal protection. *See Hill v. Stone,* 421 U.S. 289, 95 S.Ct. 1637, 44 L.Ed.2d 172 (1975); *Phoenix v. Kolodziejski,* 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970), *Cipriano v. City of Houma,* 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); *Kramer v. Union Free School District,* 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969). But there is an exception to this rule. In *Salyer Land Co. v. Tulare Lake Basin Water Storage District,* 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973), the United States Supreme Court considered whether a California statute which limited the vote for the board of directors of a water storage district to district landowners violated the equal protection clause. The water district existed for the purpose of storage and distribution of irrigation waters to farms within the district and provided no other general public services. Its costs were assessed against land in

proportion to the benefits received. The Court concluded that the statute did not violate the equal protection clause because of the special limited purpose of district and the water district election was of sufficient "special interest" to the taxpaying landowners that the franchise could constitutionally be denied to others. *Id.*, 410 U.S. at 728, 93 S.Ct. at 1229. Because irrigation districts are limited purpose districts, and presumably would have a disproportionate effect on landowners, it appears that the *Salyer* exception would apply.

■ Appellants argue that this difference in voter eligibility is irrelevant to our analysis of Articles 7807d and 7807dd because Section 58.222 only applies to elections of the irrigation district's own board of directors and does not apply to the election of an irrigation district's director serving on the Red Bluff District board of directors. We agree. The board of directors of Ward District 1 and Ward District 3 are elected according to the procedures prescribed by Chapter 58, but the election for the Red Bluff District board of directors is conducted in accordance with Article 7807d and Chapter 55 of the Water Code. Article 7807d, § 9 provides that all elections for the directors of a water power control district are conducted in accordance with general election law and the provisions of law for water improvement districts. Therefore, voter qualification in the Red Bluff District board of directors elections is based on residency as established by Section 11.001 of the Election Code. A conflict is not created by permitting Chapter 58 irrigation districts to be a member division of the Red Bluff District.

We therefore hold that Ward District 1 and Ward District 3 are not disqualified from membership in the Red Bluff District. Issue One raised by Ward District 1 and Ward District 3 is sustained. Like-wise, we sustain Issues A, B, D, and E raised by Reeves District 2. We reverse the judgment of the trial court and render a declaratory judgment that: (1) Ward District 1 and Ward District 3, despite their conversion to Chapter 58 irrigation districts, are organized districts within and member divisions of the Red Bluff District; (2) Ward District 1 and Ward District 3 are each entitled to have their elected director serve on the board of directors for the Red Bluff District; (3) Tom Nance and Ava Gerke shall be seated on the Red Bluff District to serve their terms; (4) Ward District 1 and Ward District 3 are awarded reasonable attorney's fees in the sum of $22,075; and (5) Reeves District 2 is awarded reasonable attorney's fees in the sum of $17,500.