

**NUMBER 13-08-153-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**ENGELMAN IRRIGATION DISTRICT,**                                    **Appellant,**

**v.**

**NELDA LEE SHIELDS AND**
**NINA GARCIA GARRETT,**                                                      **Appellees.**

---

**On appeal from the 93rd District Court of Hidalgo County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Benavides**
**Memorandum Opinion by Justice Benavides**

Engelman Irrigation District ("Engelman") appeals (1) an order of the trial court

enjoining Engelman from implementing its February 13 and March 27, 2008 changes to

its requirements for voting by proxy in an election for Engelman's Board of Directors to be

held on May 10, 2008, and (2) an order denying its plea to the jurisdiction. Because the

issues in this appeal involve the application of well-settled principles of law, we affirm the

trial court's orders in this memorandum opinion.[1]

## I. Background

The Texas Water Code contains provisions which govern elections in irrigation districts. *See generally* TEX. WATER CODE ANN. §§ 58.221-.226 (Vernon 2004).[2] Pursuant to the Texas Water Code, only a landowner or a landowner's designated representative is qualified to vote in an irrigation district election. *See id.* § 58.223. Any landowner who elects to designate a representative to vote on its behalf, that is, a proxy, must register the representative to vote on a form prescribed by the district. *See id.* § 58.224. The form must be received by the district on or before the twentieth day before the date of the election. *Id.* Individual landowners may elect to designate a proxy to cast a vote for them, but collective landowners must vote by proxy, and landowners who are corporations or partnerships must also cast their votes by proxy. *See id.* § 58.222.

Engelman implemented and utilized voter representative designation forms in its 2006 election. Approximately 200 voters were qualified to vote in that election, and approximately thirty-seven voted by proxy registration forms. These forms provided that they "shall be valid so long as (1) we are landowners [sic] qualified voters in elections

---

[1] In conjunction with issuing this memorandum opinion, we GRANT appellant's motion for expedited consideration of this case. We DENY appellant's motion for temporary orders asking this Court to stay the election. Accordingly, appellant's first supplemental motion for temporary orders and motion for expedited consideration is GRANTED in part, as to the request for expedited relief, and DENIED in part, as to the request for temporary orders. We GRANT appellant's motion for leave to amend its brief. We previously GRANTED appellees' motion for extension of time to file a response to appellant's motion and supplemental motion for temporary orders and to file their amended or supplemental brief, if any, to May 6, 2008. We DENY appellees' further motion to extend time to file an amended or supplemental brief.

[2] All water districts are governed by a board of directors with the number of directors established by the specific law applicable to the district. TEX. WATER CODE ANN. § 49.051 (Vernon 2000). Unless otherwise provided by law, the elections are conducted in accordance with the Texas Election Code. *See id.* § 49.101 (Vernon 2000); *Ward County Irrigation Dist. No. 1 v. Red Bluff Water Power Control Dist.*, 170 S.W.3d 696, 705 (Tex. App.–El Paso 2005, no pet.).

2

conducted by the District, or (2) the designated representative is eligible to vote, or (3) until this registration is cancelled."

At board meetings held on February 13 and March 27, 2008, however, the Board of Directors of Engelman voted to cancel the 2006 voter representative registrations and to adopt a new registration form for voting by proxy.[3]  Specifically, in order to vote, "Voter Representative Registration must be requested by the landowner and be notarized." These new forms and requirements were intended to apply to the May 10 election for Engelman's Board of Directors, and were required to be submitted to Engelman twenty days prior to the election.  Engelman neither sought nor obtained preclearance from the United States Attorney General or the United States District Court for the District of Columbia for these changes.  *See* 42 U.S.C. § 1973c.

Appellees, Nelda Lee Shields and Nina Garcia Garrett, who are joint owners of separate tracts of land within the District, brought suit against Engelman in the 93rd District Court of Hidalgo County requesting a temporary restraining order and injunctive relief. Shields is a member of the Board of Directors of Engelman and was elected to that position in 2006.  Garrett is a candidate for the Board of Directors in the upcoming May 10 election.

In their pleadings, appellees alleged that Engelman's acts in canceling the 2006 voter registration representative designation forms and promulgating new forms and procedures amounted to illegal voter suppression in violation of the United States and Texas Constitutions and the Texas Election Code.  At evidentiary hearings on the

---

[3] Appellees also contend that these board actions were illegal because two of the voting board members were ineligible to serve on the board.

3

requested injunctive relief, appellees produced evidence pertaining to the difficulties of obtaining the new forms in terms of landowners being required to leave work in order to pick up the forms from Engelman in person and in terms of identifying those individuals who were qualified to request the form on behalf of a corporation or partnership. Appellees further produced testimony indicating that Engelman had not clearly established procedures for obtaining the new forms and that its employees were themselves uncertain as to the requirements for obtaining and properly executing the new forms. Appellees further adduced testimony that the cost of notarizing each of the forms would be $5 or more per form.

Herminia Hinojosa, the bookkeeper, tax assessor and collector, and secretary for Engelman testified that, under the new rules, a request for a new form would need to be in writing. While Shields testified that it was her understanding that the request for the new form would have to be notarized, Hinojosa did not know whether or not the request itself would have to be notarized. Hinojosa was uncertain as to the further and specific requirements for obtaining and executing a proxy under the proposed new form. Jesus Flores, President of the Board of Directors, was unable to clarify many of these issues.

Hinojosa testified that she posts a list of eligible, qualified voters at Engelman's office and at the county courthouse forty days before the election, and the voter registration forms must be turned in twenty days before the election. Shields testified that, during the 2006 election for Board of Directors, she attempted to provide designation forms to Engelman, but Hinojosa refused to accept the designation forms on grounds that Shields "went and got these signatures." Hinojosa told Shields that the taxpayer was required to return the forms to Engelman in person. Hinojosa disagreed with this portion of Shields's

4

testimony, stating that was not "exactly" the case.

Following the evidentiary hearings, the trial court entered a series of injunctive orders.[4]  The second injunctive order, issued on March 24, stated the following:

> [T]he Court finds that harm is imminent to [appellees], and if the Court does not issue this injunction, [appellees] will be irreparably injured by the actions of defendant Engelman Irrigation District with regard to the use and/or non-use of voter representative registrations in the upcoming May 10, 2008 election in Engelman Irrigation District for directors of said district.
>
> * * *
>
> The Court finds that the following complained of acts and/or omissions . . . i.e., requiring landowners to request voter representative forms from defendant and requiring that said registrations be notarized – will or will most likely cause said election to be illegal because: the said complained of acts and/or omissions of defendant constitute voter suppression in violation of the rights of [appellees] and voters in said district to vote by representative; and because said voter suppression is against the rights of equal protection and due process due to [appellees] and the district landowners who can only vote by representative in district elections.
>
> The Court also finds that [appellees] have no adequate remedy at law because the election is set for May 10, 2008, and the complained of acts and/or omissions will likely result in an unlawful election.  The Court also finds that injunctive relief under these circumstances will not prevent the scheduled election, but will act to facilitate a proper election, and eliminate an unnecessary, costly, and time consuming election contest.
>
> Therefore, defendant, its officers, agents, servants, and employees are hereby ORDERED not to require landowners to request voter representative registration forms from defendant, and ORDERED not to require that said registrations be notarized.

That same day, the trial court denied Engelman's plea to the jurisdiction.  By subsequent order, issued on April 18, the trial court further directed that:

---

[4] When the trial court modifies a temporary injunction during the pendency of an appeal of the original injunction, the appellate court retains jurisdiction to review the modified order if it concerns the same subject matter as the original order.  *See* TEX. R. APP. P. 29.6(a)(1).

The Court's order of March 24, 2008 shall remain in effect, and the Court hereby orders as follows: (1) Engelman Irrigation District, its directors, officers, agents, attorneys, servants, employees, and representatives, shall use and accept the 2006 Engelman Irrigation District Voter Representative Registration forms . . . for voting by representative as per Chapter 58 of the Texas Water Code in the upcoming election set for May 10, 2008 for election of directors of Engelman Irrigation District; and (2) Theresa Navarrro, the Hidalgo County Elections Administrator, and/or her deputies, shall conduct said election set for May 10, 2008 and shall immediately take charge of the election procedures in connection with said election including, but not limited to, any compilation and/or listing of the landowners or registered representatives of landowners eligible to vote in said election as per Chapter 58 of the Texas Water Code sections 58.221-58.226.

On April 3, appellees filed a verified complaint and a request for preliminary and permanent injunctive relief in the United States District Court for the Southern District of Texas, McAllen Division, in cause number M-08-116, based on Engelman's alleged violation of the Voting Rights Act of 1965. *See* 42 U.S.C. § 1973c. They contended that Section 5 of the Voting Rights Act of 1965 requires a covered jurisdiction to refrain from implementing any new voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect in 1964, unless that jurisdiction first obtains preclearance for the change from the United States Attorney General or the United States District Court for the District of Columbia. *Id.*

It is undisputed that Engelman did not obtain preclearance for the changes in voter registration. Accordingly, on April 25, the district court issued an order in which it concluded that the changes made by Engelman "are unenforceable until precleared pursuant to 42 U.S.C. § 1973c, and the new voter registration requirements affect [appellees'] ability to vote." The district court thus enjoined Engelman from enforcing any

of the voter registration requirements that it adopted in 2008.[5]

## II. Temporary Injunction

In its first issue, Engelman argues that the trial court abused its discretion by issuing a temporary injunction enjoining Engelman from requiring a notarized signature on the voter representative designation form and from enforcing the requirement that a landowner wishing to vote in the election must request a designation form from Engelman. In its third issue, Engelman argues that the trial court erred by issuing an injunction ordering Engelman to use and accept the 2006 voter representative designations for use in the 2008 election and by ordering the Hidalgo County Elections Administrator to take charge of the election.

A trial court has broad discretion in deciding whether to grant or deny a temporary injunction. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). We review the evidence in the light most favorable to the order and indulge all reasonable inferences in favor of the decision. *City of McAllen v. McAllen Police Officers Union*, 221 S.W.3d 885, 893 (Tex. App.–Corpus Christi 2007, pet. denied). When, as here, the trial court does not make findings of fact or conclusions of law, we must uphold the court's order on any legal theory supported by the record. *See id.* A trial court does not abuse its discretion if it bases its decision on conflicting evidence and evidence in the record reasonably supports the trial court's decision. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978).

To establish a right to a temporary injunction, an applicant must show: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable,

---

[5] This matter remains pending in the United States District Court for the Southern District of Texas, and is not the subject of this appeal.

7

imminent, and irreparable injury for which there is no adequate remedy at law. *Butnaru*, 84 S.W.3d at 204; *Wilson N. Jones Mem'l Hosp. v. Huff*, 188 S.W.3d 215, 218 (Tex. App.–Dallas 2003, pet. denied). An adequate remedy at law is one that is as complete, practical, and efficient to the prompt administration of justice as is equitable relief. *Huff*, 188 S.W.3d at 218. A probable right of recovery is shown by alleging a cause of action and presenting evidence tending to sustain it. *Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 597 (Tex. App.–Amarillo 1995, no writ). An injury is irreparable if damages would not adequately compensate the injured party or if they cannot be measured by any certain pecuniary standard. *Butnaru*, 84 S.W.3d at 204.

The purpose of a temporary injunction is to preserve the status quo until a trial on the merits. *Id.*; *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993). The status quo is the "last, actual, peaceable, noncontested status which preceded the pending controversy." *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 577 (Tex. App.–Austin 2000, no pet.)

In an appeal from an order granting or denying a request for a temporary injunction, appellate review is confined to the validity of the order that grants or denies the injunctive relief. *Id.* (quoting *Transp. Co. v. Robertson Transps., Inc.*, 152 Tex. 551, 261 S.W.2d 549, 553-54 (1953)).

Engelman first contends that appellees must show that it committed a "wrongful act" in order to obtain a temporary injunction.[6] The trial court had before it undisputed evidence

---

[6] Engelman's argument that appellees must show that it committed a "wrongful act" is premised on cases concerning the applicable standard for obtaining permanent, not temporary, injunctive relief. *See, e.g., Walter v. Walter*, 127 S.W.3d 396, 398 (Tex. App.–Dallas 2004, no pet.) (requiring (1) the existence of a wrongful act; (2) the existence of imminent harm; (3) the existence of irreparable injury; and (4) the absence of an adequate remedy at law); *Green v. Unauthorized Practice of Law Comm.*, 883 S.W.2d 293, 296 (Tex.

8

that Engelman failed to obtain required preclearance for its new voter registration forms. The trial court also had before it sufficient evidence from which it may have concluded that the new voter forms and procedures were simply too uncertain to apply uniformly and equally to all voters, particularly given the conflicting testimony given by Shields, Hinojosa, and Flores regarding the application of procedures for obtaining and implementing the new form. Moreover, the testimony presented at the hearings in this matter indicated that the new forms would be difficult to obtain and perhaps costly as well, thus the trial court may have concluded that appellees offered some evidence of voter suppression. We thus conclude that appellees properly presented a cause of action against Engelman and further presented some evidence tending to sustain it. *Butnaru*, 84 S.W.3d at 204.

Engelman further argues that appellees failed to show that they would suffer imminent harm and irreparable injury. In this context, Engelman contends that the evidence before the trial court consisted merely of speculation that harm or voter suppression might occur if the new forms were implemented.

The trial court did not agree with Engelman's view of the evidence, and we have no basis to reject the trial court's conclusion. In this regard, we would note that appellees presented some testimony from which the trial court may have concluded that Engelman's proposed forms would hinder or impair the district's landowners' ability to vote. The record further indicates that Engelman's failure to obtain preclearance for the registration changes

App.–Dallas 1994, no writ) (same). The Texas Supreme Court has repeatedly held that in order to obtain a temporary injunction, as in the instant case, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *See, e.g., Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993); *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex. 1968).

would result in an illegal election. Under these circumstances, we conclude that damages would not adequately compensate appellees, and that their injuries cannot be measured by any certain pecuniary standard. *See id.*

Engelman further contends that appellees have an adequate remedy at law in the form of an election contest, and thus the trial court erred in granting the temporary injunction. We disagree. Our analysis of this issue is controlled by *Blum v. Lanier*, 997 S.W.2d 259 (Tex. 1999).

In *Blum*, the Texas Supreme Court considered (1) whether a district court has jurisdiction to enjoin a city from using allegedly vague and misleading language on the ballot describing the proposed amendment to the city charter initiated by petition, and (2) whether a qualified voter who signs the petition that initiates the election has standing to seek the injunction against the ballot proposition the city drafted. *See id.* at 260. The court answered "yes" to both questions. *Id*.

According to the supreme court, an injunction that delays an election would be improper, but an injunction that facilitates the elective process may be appropriate. *See id.* at 263. "In short, if the matter is one that can be judicially resolved in time to correct deficiencies in the ballot without delaying the election, then injunctive relief may provide a remedy that cannot be adequately obtained through an election contest." *Id.* at 263-64. The court considered, and rejected, the possibility that an election contest occurring after the election could serve as an adequate remedy at law. *Id.* at 264; *see City of McAllen*, 221 S.W.3d at 892. We reach the same conclusion herein.

10

Finally, Engelman contends that the trial court violated the "separation of powers" doctrine by issuing the injunction because Engelman has authority, under statute, to select its voter representative designation forms. "It is well settled that separation of powers and the judiciary's deference to the legislative branch require that judicial power not be invoked to interfere with the elective process." *Blum*, 997 S.W.2d at 263. However, in the instant case, appellees have neither sought nor received an injunction preventing the scheduled election, but have instead received an injunction that, based upon the record before us, facilitates the elective process. *See id.* Accordingly, we reject Engelman's argument pertaining to any alleged violation of the separation of powers doctrine. *Id.*

Given the standard of review and the state of the evidence, we cannot conclude that the trial court abused its discretion in enjoining Engelman from using the new forms. We conclude, without making a determination on the merits, that the plaintiffs established a probable right to relief. Accordingly, we overrule Engelman's first and third issues, and affirm the trial court's temporary injunctive order.

### III. Plea to the Jurisdiction

In its second issue, Engelman argues that the trial court erred in denying its plea to the jurisdiction. Engelman first argues that appellees lack standing because they do not possess an interest distinct from the general public such that Engelman's actions have caused them each a special injury. Engelman further argues that there are no justiciable issues in this case because the appellees' claims are based on allegations concerning the deliberative process and policy making decisions of Engelman's board of directors. Finally, Engelman contends that it possesses immunity from suit.

11

Standing is a constitutional prerequisite to maintaining suit. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). Under Texas law, standing limits subject matter jurisdiction to cases involving a distinct injury to the plaintiff and "a real controversy between the parties, which . . . will be actually determined by the judicial declaration sought." *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 517-18 (Tex. 1995). Stated differently, a party has standing to bring suit if (1) it has suffered a distinct injury, and (2) there exists a real controversy that will be determined by the judicial determination sought. *Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001). This second component of standing refers to presentation of a justiciable issue. *State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245-46 (Tex. 1994).

As a component of subject matter jurisdiction, we review a claimant's standing de novo, *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004), and we consider appellees' standing as we would a plea to the jurisdiction, construing the pleadings in favor of the plaintiff. *See Brown*, 53 S.W.3d at 305.

"No Texas court has ever recognized that a plaintiff's status as a voter, without more, confers standing to challenge the lawfulness of governmental acts." *Id.* at 302. The Texas Supreme Court has, however, recognized exceptions to this general rule. For instance, petition signers have standing to challenge the referendum process, although they do not have standing to challenge the results of the election. *Id.* at 301-01; *see Blum*, 997 S.W.2d at 262; *Glass v. Smith*, 150 Tex. 632, 244 S.W.2d 645, 648 (Tex. 1951); *In re Robinson*, 175 S.W.3d 824, 828 (Tex. App.–Houston [1st Dist.] 2005, orig. proceeding).

12

We conclude that *Blum* and *Glass* control our analysis of this matter, rather than *Brown*. In the instant case, appellees are not challenging the results of the election, but are instead challenging the process of the election; that is, the requirements for voting in the election by proxy and Engelman's failure to obtain preclearance for its 2008 changes in the designation forms. In particular, appellees claim voter suppression because Engelman's alleged unlawful actions have extinguished their right to vote in the upcoming election. In this regard, Engelman's actions cancelled both Shields and Garrett's 2006 designation forms. Further, Garrett is a candidate for the Board of Directors and thus has a particular, individualized interest in the voter qualifications for this election. *Cf. Lemons v. Wylie*, 563 S.W.2d 882, 883 (Tex. Civ. App.–Amarillo 1978, writ dism'd w.o.j.) (a candidate for office has an interest, separate and apart from the general public, in not being opposed by an ineligible candidate). Accordingly, we conclude that appellees have established injuries distinct from voters at large, and accordingly, have standing to pursue their claims against Engelman.

Engelman further attacks appellees' standing by contending that appellees' claims are based on the deliberative process and policy making decisions of its Board of Directors, and thus there are no justiciable issues to be determined in this case. We cannot agree with Engelman's characterization of appellees' claims. In the instant case, there is a very real controversy regarding whether or not Engelman's actions in revising its designation forms and procedure complied with applicable state and federal law and whether or not such actions amounted to voter suppression.

13

Finally, Engelman argues that it is immune from suit based on sovereign immunity. Engelman, as an irrigation district, derives its authority and purpose from Article XVI of the Texas Constitution and as such, is a governmental agency of the State. *See* TEX. CONST. art. XVI, § 59(a), (b). It is well-established that governmental entities generally enjoy immunity from suit, unless the legislature has explicitly waived such immunity. *See, e.g., Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006); *City of Weslaco v. Borne*, 210 S.W.3d 782, 789 (Tex. App.–Corpus Christi 2006, pet. denied).

A plea to the jurisdiction grounded on sovereign immunity challenges the trial court's subject matter jurisdiction. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). In our de novo review, we first determine whether the plaintiffs' petition, construed liberally and looking to the pleader's intent, pleads facts affirmatively demonstrating that jurisdiction exists. *Id.* at 642-43.

According to Engelman, this Court should reject appellees' argument that the "sue and be sued" clause in section 49.066 of the Texas Water Code waives Engelman's immunity from suit. We agree. This language does not waive the District's immunity from suit. *See Satterfield & Pontikes Constr., Inc. v. Irving Indep. Sch. Dist.*, 197 S.W.3d 390, 391 (Tex. 2006) (per curiam); *see also Tooke*, 197 S.W.3d at 342. The words "sue or be sued" in section 49.066(a) of the Texas Water Code do not, by themselves, waive governmental immunity. *See Tooke*, 197 S.W.3d at 342; *Valley Mun. Util. Dist. No. 2 v. Rancho Viejo, Inc.*, No. 13-07-00545-CV, 2008 Tex. App. LEXIS 1109, at *11 (Tex. App.–Corpus Christi Feb. 14, 2008, no pet.)(mem. op).

14

Nevertheless, appellant has failed to establish that it is categorically immune from suit in the instant case. Sovereign immunity does not bar due course of law claims or bill of rights claims under Texas law. *See, e.g., City of Beaumont v. Bouillion*, 896 S.W.2d 143, 148-49 (Tex. 1995); *Nueces Cty. v. Ferguson*, 97 S.W.3d 205, 221 n.23 (Tex. App.–Corpus Christi 2002, no pet.). Further, sovereign immunity does not bar a suit that alleges a violation of a self-enacting state constitutional provision. *Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex. 1980). Moreover, "[a] private litigant does not need legislative permission to sue the State for a state official's violations of state law." *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 404 (Tex. 1997) (citing *Dir. of the Dep't of Agric. & Env't v. Printing Indus. Ass'n of Tex.*, 600 S.W.2d 264, 265-66 (Tex. 1980) (holding legislative consent not required for suit for injunctive relief against state agency to halt unauthorized printing equipment and printing activities); *Tex. Highway Comm'n v. Tex. Ass'n of Steel Imps., Inc.*, 372 S.W.2d 525, 530 (Tex. 1963) (holding legislative consent not required for declaratory judgment suit against Highway Commission to determine the parties' rights); *Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d 709, 712 (Tex. 1945) (holding legislative consent not required for declaratory judgment suit against State Comptroller to determine parties' rights under tax statute)). In this regard, a state official's illegal or unauthorized actions are not acts of the State and sovereign immunity does not bar an action to determine or protect a private party's rights against that state official who has acted without legal or statutory authority. *Fed. Sign*, 951 S.W.2d at 404. Thus, a party can maintain a suit to determine its rights without legislative permission. *Id*. Accordingly, suits that merely seek to compel officials to act as required by law do not attempt to subject

the state to liability, and they do not implicate sovereign immunity. *Powell v. Tex. Dep't of Crim. Justice*, No. 13-06-00192-CV, 2008 Tex. App. LEXIS 936, at *16 (Tex. App. Corpus Christi Feb. 7, 2008, no pet.).

In the instant case, appellees do not seek monetary damages and do not seek to impose liability on Engelman, but rather seek to determine their voting rights and to compel Engelman to conduct its election according to state and federal law. Accordingly, Engelman is not immune from suit. We overrule Engelman's second issue and affirm the trial court's order denying Engelman's plea to the jurisdiction.

## IV.  Conclusion

Having overruled each of Engelman's issues, we affirm the order of the trial court denying Engelman's plea to the jurisdiction and the order granting the temporary injunction.

_____
GINA M. BENAVIDES,
Justice

Memorandum Opinion delivered and
filed this the 8th day of May, 2008.

16